UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANCE THEATRE OF HARLEM, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CHROMADIVERSE, INC., JUDY TYRUS, HARRIETT GILBERT, SHERRY GAGNON,<br><br>and<br><br>All photographs, negatives, and related archival material created by Margaret Elizabeth Schnare for Dance Theatre of Harlem and located at 466 West 152nd Street, New York, New York, *in rem*,<br><br>Defendants. | Index No. _____<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Dance Theatre of Harlem, Inc., by and through its attorneys, Clarick Gueron Reisbaum LLP, as and for its Complaint against Defendants ChromaDiverse, Inc., Judy Tyrus, Harriett Gilbert, and Sherry Gagnon, and with respect to *in rem* Defendant as described herein, alleges as follows:

**NATURE OF THE ACTION**

1. Dance Theatre of Harlem ("DTH")—a professional ballet company and school founded in 1969 on the principle of centering people of color in ballet and the performing arts—brings this action to protect an invaluable archive of historical images and related materials created for it by its longtime photographer Margaret Elizabeth Schnare.

2. Defendants Judy Tyrus and her non-profit corporation ChromaDiverse have wrongly asserted ownership of the DTH archive, with the assistance of Schnare's heirs,

Defendants Harriett Gilbert and Sherry Gagnon. The heirs purported to convey part of the DTH archive to ChromaDiverse, at Tyrus's behest, on the premise that these materials had passed to them through Schnare's estate. But the entire archive always has belonged and still belongs to DTH, and none of it ever belonged to Schnare's heirs or to ChromaDiverse.

3. ChromaDiverse's (and Tyrus's) assertion of ownership over the DTH archive lacks any legal basis. It is flatly contradicted by the facts, including that Schnare created the materials in question for DTH as a works-for-hire, that DTH has possessed portions of the archive for decades, including before Schnare's death, and that DTH always exercised control over the entire archive, including before Schnare's death and now has possessed the entire archive for years. Tyrus's newfound claim to ownership by ChromaDiverse is also contradicted by her own actions, including her acting as DTH's archivist for years without ever questioning DTH's ownership of the DTH archive and her actively seeking and obtaining DTH's permission to reproduce many images from the archive in a book she published in 2021.

4. Schnare's heirs Harriett Gilbert and Sherry Gagnon also knew perfectly well that the materials in question always belonged to DTH. Gagnon actually oversaw the delivery of some of those materials to DTH upon Schnare's death. And Gilbert, for her part, renounced her role as an executor of Schnare's estate and declined any property interest she may have had as a beneficiary of Schnare's estate. On information and belief, Tyrus induced Gilbert and Gagnon to participate in her and ChromaDiverse's attempted misappropriation of DTH's property, despite their lack of any title, right, or interest in that property.

5. This misappropriation of DTH's property and history is wrongful and works to DTH's pecuniary harm—not to mention the incalculable institutional harm of stripping this venerable institution of its history. The law does not allow this. Accordingly, DTH is entitled to

2

a declaration that it owns and has all right, title, and interest in both its physical archive and all associated copyrights.

## PARTIES

6. Plaintiff DTH is a New York 501(c)(3) corporation with its principal place of business at 466 West 152nd Street, New York, New York.

7. Defendant ChromaDiverse, Inc. is a California 501(c)(3) corporation with its principal place of business at 401 Harrison Street, Apt. 36F, San Francisco, California.

8. Defendant Judy Tyrus, the principal of ChromaDiverse, is an individual who, on information and belief, resides in San Francisco, California.

9. Defendant Harriett Gilbert is an individual who, on information and belief, resides in Chino Valley, Arizona.

10. Defendant Sherry Gagnon is an individual who, on information and belief, resides in Prescott, Arizona.

11. The *in rem* Defendant comprises all photographs, negatives, and related archival material created by Margaret Elizabeth Schnare for Dance Theatre of Harlem (the "DTH Archive"), all of which is located at 466 West 152nd Street, New York, New York.

## JURISDICTION AND VENUE

12. This Court has exclusive subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because it arises under the Copyright Act in that it presents a claim that requires construction of the Copyright Act.

13. This Court has *in rem* and *quasi in rem* jurisdiction over this action pursuant to 28 U.S.C. § 1655, because the physical property that is the subject of this action, in which Defendants wrongfully claim an interest adversely affecting DTH's right, title, and interest to

that physical property such that DTH now seeks to remove a cloud of title, is located in this District.

14. This Court has jurisdiction to grant the requested declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

15. This Court has supplemental jurisdiction over the fourth and fifth causes of action pursuant to 28 U.S.C. § 1367.

16. Defendant ChromaDiverse is personally subject to jurisdiction in this Court because it committed a tortious act causing injury to DTH in New York and regularly does business and engages in a persistent course of conduct in New York to the extent that it markets and provides its services to customers and potential customers in New York and solicits financial support from funders in New York.

17. Defendant Tyrus is personally subject to jurisdiction in this Court because she committed a tortious act causing injury to DTH in New York and regularly does business and engages in a persistent course of conduct in New York to the extent that, in her role as the principal of ChromaDiverse, she frequently travels to New York to meet with clients, potential clients, and funders of ChromaDiverse.

18. Defendant Gilbert is personally subject to jurisdiction in this Court because the claims in this action arise from her transaction of business, following the death of Margaret Elizabeth Schnare, as an executor of Schnare's estate and in connection with the distribution of property that was in Schnare's possession in New York at the time of her death.

19. Defendant Gagnon is personally subject to jurisdiction in this Court because the claims in this action arise from her transaction of business following the death of Margaret

that physical property such that DTH now seeks to remove a cloud of title, is located in this District.

14. This Court has jurisdiction to grant the requested declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

15. This Court has supplemental jurisdiction over the fourth and fifth causes of action pursuant to 28 U.S.C. § 1367.

16. Defendant ChromaDiverse is personally subject to jurisdiction in this Court because it committed a tortious act causing injury to DTH in New York and regularly does business and engages in a persistent course of conduct in New York to the extent that it markets and provides its services to customers and potential customers in New York and solicits financial support from funders in New York.

17. Defendant Tyrus is personally subject to jurisdiction in this Court because she committed a tortious act causing injury to DTH in New York and regularly does business and engages in a persistent course of conduct in New York to the extent that, in her role as the principal of ChromaDiverse, she frequently travels to New York to meet with clients, potential clients, and funders of ChromaDiverse.

18. Defendant Gilbert is personally subject to jurisdiction in this Court because the claims in this action arise from her transaction of business, following the death of Margaret Elizabeth Schnare, as an executor of Schnare's estate and in connection with the distribution of property that was in Schnare's possession in New York at the time of her death.

19. Defendant Gagnon is personally subject to jurisdiction in this Court because the claims in this action arise from her transaction of business following the death of Margaret

Elizabeth Schnare, in connection with the administration of Schnare's estate and the distribution of property that was in Schnare's possession in New York at the time of her death.

20. Venue is appropriate in this District (a) pursuant to 28 U.S.C. §§ 1391(b)(2) and 1655 because a substantial part of the events giving rise to the claim occurred in this District and because the property that is the subject of the action is situated in this District and (b) pursuant to 28 U.S.C. § 1400 because all Defendants may be found in this District because they are subject to personal jurisdiction in this District as described herein.

## FACTUAL BACKGROUND

### Schnare Worked for DTH as a Photographer

21. Arthur Mitchell founded DTH in 1969, at the height of the civil rights movement, to create a haven and provide training and performance opportunities in classical ballet for dancers of all races and colors.

22. From its inception, DTH employed photographer Margaret Elizabeth ("Marbeth") Schnare to chronicle its activities and work.

23. DTH's management—including its founder, Mitchell—closely supervised Schnare's work and directed the time and manner in which she carried out that work, employing her and providing her access to photograph DTH everywhere (including at rehearsal, backstage, on stage, and during its many tours).

24. DTH paid Schnare for her work. It also paid for her expenses. For example, when DTH toured domestically and internationally (as it often did), Schnare travelled with DTH at DTH's expense.

25. The majority of the photographs that Schnare took for DTH were created between 1969 and 1975.

5

26. Throughout its history, DTH has used photographs taken by Schnare for a variety of purposes, including for DTH's marketing and publicity efforts, for souvenir books DTH sold to the public, and to document DTH's history.

27. During Schnare's lifetime, both Schnare and DTH treated the photographs that Schnare took for DTH—and the copyrights in those images—as belonging to DTH, and DTH exercised control over those works, regardless of where they were stored.

28. During her lifetime, Schnare delivered to DTH, for its own possession, many of the photographs and related materials that Schnare created for it.

29. DTH has continuously stored, at its own space in New York City, those materials, since long before Schnare's death and through the present day.

30. In addition to the Schnare materials DTH stored at its own space during and after Schnare's lifetime, Schnare also stored a supplemental collection of other photographs and related materials for DTH at her home during her lifetime. Though stored at Schnare's home, DTH owned and controlled these materials, just as it owned and controlled the materials in its own possession.

31. Whenever DTH needed or wished to possess or use any of the materials that Schnare had stored at her home during the course of her lifetime, it asked Schnare to provide them, and she did so.

32. After Schnare's death, DTH took possession of the supplemental collection of materials stored at Schnare's home as described further *infra*, adding it to the materials that Schnare had delivered to DTH previously and that, accordingly, already were in DTH's possession.

33.     Collectively, the materials that Schnare provided to DTH during her lifetime and the supplemental collection of materials that she stored at her home and which DTH took possession of after her death—*i.e.*, the DTH Archive—comprise the lion's share of DTH's historical archive of its earliest years.  In total, the DTH Archive comprises some 24 boxes of physical prints, negatives, and related materials, the historical and artistic value of which are unique and irreplaceable, and which are invaluable from DTH's perspective.

34.     The DTH Archive is, at present, in DTH's possession (as it has been since 2009 at the latest) and is located at DTH's headquarters at 466 West 152nd Street, New York, New York.

35.     Defendant Tyrus is an alumna of DTH and previously was a principal dancer with DTH.  After retiring as a dancer, she worked for DTH in various roles, including as DTH's archivist from 2008 to 2015—in which role she worked closely with the DTH Archive.

36.     In 2019, Tyrus founded Defendant ChromaDiverse, which, on information and belief, markets a "digital vault" product to performing arts organizations to digitize and preserve archival materials.

**After Schnare's Death, the DTH Materials Remaining In Her Apartment**
**Were Delivered to DTH, with the Approval of Schnare's Executors and Heirs**

37.     Schnare died on August 21, 2006.

38.     In her will, Schnare named two relatives, Gloria Euler and Defendant Harriett Gilbert, as executors; she bequeathed her father's letters and papers to an academic institution; and she left her residuary estate to Euler and Gilbert.

39.     Schnare's will did not purport to bequeath the DTH materials that were stored in her apartment at the time of her death to anyone.  Nor, for that matter, did her will purport to bequeath the materials she had already delivered to DTH during her lifetime.  This, of course, is

7

consistent with the fact that DTH already owned all right, title, and interest in all of those materials, which Schnare had created for DTH as works-for-hire.

40. Shortly after Schnare's death, her close friend Doris Fiotakis visited Schnare's apartment with executor and beneficiary Euler and Euler's daughter, Defendant Sherry Gagnon. Defendant Gilbert (the second executor and beneficiary named in Schnare's will) did not attend and renounced her right to act as an executor of the estate.

41. At Schnare's apartment, Euler and Fiotakis agreed that Fiotakis would take possession of the DTH materials stored in Schnare's apartment. Euler and Fiotakis also discussed that Fiotakis would deliver these materials to DTH. This plan was consistent with the fact that these materials belonged to DTH, with DTH's and Schare's words and actions during Schare's lifetime, and with Fiotakis's understanding of Schnare's own view of and wishes as to these materials.

42. Upon Schnare's death, neither Euler, Gilbert, nor Gagnon expressed any ownership or personal interest in the physical photographs or negatives that Schnare had taken for DTH, nor in the copyrights in those works, nor did they object to Fiotakis taking possession of the DTH materials and delivering them to DTH. To the contrary, they endorsed and facilitated this plan.

43. Fiotakis in fact took possession of the DTH materials from Schnare's apartment in 2006 and had them delivered to her own home in Connecticut, where she organized those materials.

44. In September 2006, Euler (as the sole executor of Schnare's estate, since Gilbert had renounced her role) signed an Affidavit in Relation to the Settlement of Estate, in which she affirmed that Schnare's estate comprised a checking account, items on Schnare's person at the

time of her death, and "items in [Schnare's] sealed apt," which Euler valued at $1000. The Affidavit did not mention DTH, or any DTH photographs, negatives, boxes, or other materials in the DTH Archive.

45. In 2008 or 2009, Fiotakis invited DTH to her home in Connecticut to retrieve the materials delivered to her from Schnare's apartment. Tyrus, who was then working with DTH as an archivist, visited Fiotakis at her home, along with others from DTH, for this purpose. Tyrus and the others from DTH who accompanied her took possession of the DTH materials on DTH's behalf and delivered them to DTH—uniting them with the balance of the DTH Archive.

**DTH's Ongoing Possession and Use of the DTH Archive**

46. In the many decades since Schnare started working for DTH—and the more than fifteen years since DTH took possession of the materials that had been stored in Schnare's apartment—DTH exclusively and openly has used materials from the DTH Archive, including those retrieved from Fiotakis.

47. As DTH's archivist, Tyrus had access to the DTH Archive, and helped DTH identify and use material from the Archive for various public and internal purposes.

48. For example, while working for DTH, Tyrus (on behalf of DTH) developed a traveling exhibition using materials from the DTH Archive, for which DTH was compensated.

49. Before 2022, Tyrus repeatedly affirmed DTH's ownership over the DTH Archive, and the copyrights in works that are part of the Archive.

50. For example, a project that Tyrus created for DTH, and which is available at https://artsandculture.google.com/story/ tAVRFQMZDQqbLw, includes material from the DTH Archive and includes the credits "Photographs by Marbeth," "Copyright held by Dance Theatre of Harlem," and "Curated by Judy Tyrus."

9

51. As another example, after Tyrus left DTH, she planned to write a book documenting DTH's history. In connection with this project, Tyrus sought and obtained permission from DTH to use materials from the DTH Archive in her book.

52. Specifically, on November 4, 2019, ChromaDiverse (of which Tyrus is the principal) and DTH signed a Materials License Agreement ("MLA"). The MLA provides that DTH granted ChromaDiverse a non-exclusive right to use "Materials" including "archival materials, information, text, and photographs" owned and controlled by DTH and "provided by DTH to [ChromaDiverse] specifically for inclusion in the [planned book]."

53. With respect to intellectual property, the MLA states that the "rights granted pursuant to this Agreement do not constitute a transfer of any of DTH's right, title or interest in any copyrights, trademarks or any other forms of intellectual property contained in or otherwise relating to the Materials" and that "DTH specifically reserves all such rights, and all of its title and interests therein."

54. In an email she sent to DTH on April 8, 2021 concerning both her book and her plan to create a digital archive of DTH materials, Tyrus acknowledged that DTH owned those materials, writing: "ChromaDiverse, certainly does not want to take ownership of the DTH archive or compete with the [Library of Congress] or the [New York Public Library]. We do not want to hold any physical objects or use them for our own purposes."

55. Tyrus's book about DTH was published on October 26, 2021.

56. In the months leading up to the publication of the book, the relationship between Tyrus and DTH soured. Around that time, DTH advised Tyrus that it believed the book could benefit from further development and editing; DTH also raised concerns about the manner in which Tyrus had approached numerous DTH alumni about obtaining permission to use their

likenesses in the book. Tyrus seemed to perceive DTH's expression of its concerns as inadequate support of her efforts to publish and promote the book.

57. On information and belief, in 2021 or 2022, Tyrus contacted Fiotakis, ostensibly about Tyrus's plan to write a book about Schnare. Tyrus steered the conversation to ask Fiotakis about the identity of Schnare's relatives—Euler, Gilbert, and Gagnon—and the ownership of photographs Schnare took for DTH.

**Gilbert and Gagnon Wrongly Purport to Transfer DTH's Physical Property and Copyrights to Tyrus, to DTH's Harm and in Derogation of Its Rights**

58. In 2022, Gilbert and Gagnon purported to transfer and assign to ChromaDiverse certain physical property and copyrights in the DTH Archive—all of which in fact belong to DTH, which DTH has controlled and over which it has exercised dominion since the creation of those materials, and which DTH has possessed for over a decade.

59. Specifically, on May 11, 2022, Gilbert and Gagnon executed a document styled as a "Deed of Gift."

60. The Deed of Gift recited (falsely) that Gilbert and Gagnon "own all tangible and intangible property rights, title and interest in and to" the items on an attached inventory list and, further, purported to transfer all "rights, title and interest" in those items, "inclusive of all copyrights," to ChromaDiverse. The Deed of Gift further recited that no consideration was "expected or required" from ChromaDiverse, and ChromaDiverse has since described the transfer as a "donation."

61. The Deed of Gift attached an "Inventory List of Marbeth Photograph Collection" that included 16 boxes of materials identified as associated with DTH, as well as other materials identified as associated with other arts institutions and individuals, including Alvin Ailey American Dance Theater, Storm King Art Center, New York City Opera, and Cicely Tyson. On

information and belief (given, in particular, the fact that the inventory includes both DTH-identified materials and non-DTH-identified materials), the inventory reflects those materials that were in Schnare's apartment at the time of her death, such that the Deed of Gift purports to transfer to ChromaDiverse only that portion of the DTH Archive that was in Schnare's apartment at the time of her death.

62. On June 15, 2022, Gilbert and Gagnon executed a document styled as a "Copyright Assignment Agreement." The "Copyright Assignment Agreement" referenced the Deed of Gift; attached an inventory list identical to that attached to the Deed of Gift; and purported to "convey, transfer and assign" to Defendant ChromaDiverse all right, title, and interest in the copyrights in the items listed on the inventory (which, as described above on information and belief, includes only that portion of the DTH Archive that was in Schnare's apartment at the time of her death).

63. Gilbert and Gagnon knew that the property described in the Deed of Gift and Copyright Assignment Agreement was not part of Schnare's estate, and that they had no right or ability to transfer that physical property or associated copyrights to ChromaDiverse. Gagnon was present at Schnare's apartment when Gagnon's mother, Euler (executer of Schnare's estate), determined that the materials would be delivered to Fiotakis who, in turn, would deliver them to DTH, consistent with DTH's ownership of the materials. Gilbert declined to attend that day and renounced her role as executor of Schnare's estate.

64. Because of Gilbert's and Gagnon's wrongful conduct, DTH has suffered harm by virtue of being deprived of the value of licensing its intellectual property to ChromaDiverse and Tyrus, who intend to use—and have already used—that property to their own ends as described

herein; of licensing its intellectual property to third parties; and by necessitating this action to settle, once and for all, DTH's ownership of and rights to its own DTH Archive in its entirety.

**Tyrus and ChromaDiverse Wrongly Claim Ownership of DTH's Physical Property and Copyrights, to DTH's Harm and in Derogation of Its Rights**

65. Since Gilbert and Gagnon executed the (invalid) Deed of Gift and Copyright Assignment Agreement in 2022, Tyrus and ChromaDiverse have sought to obtain the DTH Archive—and also to obtain DTH's acknowledgement of ChromaDiverse's supposed ownership of the copyrights therein—for their own commercial gain, under the guise of the (ineffective and null) transaction from Gilbert and Gagnon.

66. On July 18, 2022, ChromaDiverse's counsel sent DTH a letter claiming "all rights in and to The Marbeth Photographic Collection" and demanding that DTH hand over "any and all photographs taken by Marbeth (whether originals, copies or backups thereof) and all other materials, documents and things . . . that are part of the Collection, in [DTH's] possession, custody or control."

67. According to allegations in a pleading filed by ChromaDiverse in California (in which ChromaDiverse asserts claims against DTH for breach of the MLA and seeks declaratory relief), ChromaDiverse alleges that it rightfully owns the entire DTH Archive and asserts that exercising its purported rights to DTH's physical and intellectual property is an "essential source of revenue" for ChromaDiverse.

68. The filings in the California action include an affidavit by Tyrus asserting, *inter alia*, that ChromaDiverse owns the DTH Archive, an affidavit by Gagnon concerning, *inter alia*, the purported transfer of materials to ChromaDiverse, and copies of the Deed of Gift and Copyright Assignment Agreement signed by Gilbert and Gagnon.

13

69. In their California filings, ChromaDiverse and Tyrus take the position that, by virtue of the Deed of Gift and Copyright Assignment Agreement, ChromaDiverse owns "the entire photography collection of Margaret Elizabeth Schnare"—seemingly claiming ownership not just of those materials that were in Schnare's apartment at the time of her death, but of every single photograph and negative taken by Schnare for DTH since DTH's inception, many of which have been in DTH's possession since before Schare's death, and all of which has been in DTH's possession since 2009 at the latest.

70. ChromaDiverse and Tyrus have already used—and presumably will continue to use—DTH's copyrighted material for their own commercial purposes. On information and belief, they obtained that material (or copies of it) in connection with the preparation of Defendant Tyrus's book or during her tenure as DTH's archivist. And, they are using that material for the purpose of licensing it to third parties and the purpose of marketing a "digital vault" product to performing arts institutions (and seeking funding for ChromaDiverse, a non-profit) by utilizing digitized versions of DTH's copyrighted materials as a means of demonstrating the "digital vault" product to potential customers and funders.

71. ChromaDiverse and Tyrus have persisted in wrongly claiming ownership over DTH's physical property and copyrights in other contexts as well.

72. In July 2022, the digital dance magazine *Dance Informa* wrongly reported that Schnare's heirs had granted ChromaDiverse ownership of the "Marbeth Photographic Collection." On information and belief, *Dance Informa*'s reporting on this topic followed communications from Tyrus and/or ChromaDiverse.

73. Tyrus reported the purported transaction to ChromaDiverse in a July 19, 2022 post on her personal Instagram account.

74. An Instagram post by ChromaDiverse on February 24, 2025 included a photograph of DTH founder Arthur Mitchell and dancer Llanchie Stevenson, and credited the photograph to "Marbeth," "Courtesy of ChromaDiverse." Similar credits appear on Instagram posts by ChromaDiverse on February 11, 2025 and May 12, 2023.

75. But all of these claims are false, as ChromaDiverse and Tyrus well know given that Tyrus worked for many years as a steward of the DTH Archive, accepted delivery of the materials stored in Schnare's apartment on DTH's behalf, and sought permission to use material from the DTH Archive for her own book.

76. DTH now seeks to settle once and for all its ownership of its own DTH Archive, including all intellectual property rights therein.

## FIRST CAUSE OF ACTION

### Declaratory Judgment Pursuant to 28 U.S.C. §§ 2201 and 2202 That DTH Owns the Copyrights in the DTH Archive as Works-For-Hire Under the 1909 Copyright Act (17 U.S.C § 26 (1976 ed.)) and/or the 1976 Copyright Act (17 U.S.C § 201)

77. DTH repeats and realleges the foregoing allegations as if fully alleged herein.

78. DTH owns the copyrights in the DTH Archive because Schnare created the materials as works-for-hire.

79. Schnare was employed by DTH, and all of the works that constitute the DTH Archive were made within the scope of her employment and at DTH's instance and expense, such that DTH was the author of the works that comprise the DTH Archive and the owner of all right, title, and interest in and to those materials since their creation.

80. Defendants wrongfully claim an interest adversely affecting DTH's right, title, and interest in the copyrights in the DTH Archive.

15

81. A justiciable controversy exists between DTH and Defendants as to whether DTH owns the copyrights in the DTH Archive, which Defendants Gilbert and Gagnon purported to transfer to Defendant ChromaDiverse in the Deed of Gift and the Copyright Assignment Agreement and which Defendants ChromaDiverse and Tyrus have since claimed.

82. DTH is entitled to a declaration that (1) the works constituting the DTH Archive were works-for-hire such that DTH owns all right, title, and interest in and to the copyrights in those works, (2) the Deed of Gift is null and void because Defendants Gilbert and Gagnon did not own the copyrights they purported to transfer in that document, and that (3) the Copyright Assignment Agreement is null and void because Defendants Gilbert and Gagnon did not own the copyrights they purported to transfer in that document.

## SECOND CAUSE OF ACTION
[in the alternative as to Defendants ChromaDiverse and Tyrus]

**Declaratory Judgment Pursuant to 28 U.S.C. §§ 2201 and 2202
That DTH Has a Non-Exclusive Perpetual License to Copyrights in the DTH Archive**

83. DTH repeats and realleges the foregoing allegations as if fully alleged herein.

84. DTH requested that Schnare create the works that constitute the DTH Archive for the purpose of DTH's use of the photographs contained therein, including the right to reproduce the same.

85. DTH paid Schnare compensation to create the photographs contained in the DTH Archive and paid all of her costs relating to the creation of such photographs.

86. As a result of DTH's request, Schnare created the photographs contained in the DTH Archive and delivered them or constructively delivered them to DTH.

87. Schnare intended that DTH use and reproduce the photographs contained in the DTH Archive.

16

88. Defendants ChromaDiverse and Tyrus wrongfully dispute DTH's rights to use and reproduce the photographs contained in the DTH Archive.

89. A justiciable controversy exists between DTH and Defendants ChromaDiverse and Tyrus as to whether DTH has the right to use and reproduce images in the DTH Archive.

90. DTH is entitled to a declaration that it has a non-exclusive perpetual license to use and reproduce the photographs contained in the DTH Archive.

## THIRD CAUSE OF ACTION

### Declaratory Judgment Pursuant to 28 U.S.C. §§ 2201 And 2202 That DTH Owns the Physical Property In the DTH Archive

91. DTH repeats and realleges the foregoing allegations as if fully alleged herein.

92. DTH owns the physical property constituting the DTH Archive. First, Schnare was employed by DTH and the physical property that constitutes the DTH Archive was made within the scope of her employment, such that DTH has been the owner of all right, title, and interest in those materials since their creation as works-for-hire. Second, to the extent any materials vested in Schnare originally, Schnare transferred all rights therein to DTH during her lifetime, including by delivering certain of the materials to DTH. Third, to the extent any materials vested in Schnare and were not transferred to DTH by Schnare during her lifetime, Schnare's heirs transferred all rights therein to Doris Fiotakis and then to DTH, or to Doris Fiotakis as bailee for DTH. Fourth, to the extent any materials vested in Schnare and were not transferred to DTH by Schnare during her lifetime or by Schnare's heirs after her death, DTH made public, continuous, and exclusive use of those materials for more than ten years in contravention to a claim of right by Defendants to those materials.

93. A justiciable controversy exists between DTH and Defendants as to whether DTH owns the physical property in the DTH Archive, which Defendants Gilbert and Gagnon

17

purported to transfer to Defendant ChromaDiverse in the Deed of Gift, and which Defendants ChromaDiverse and Tyrus have since claimed.

94. Defendants wrongfully claim an interest adversely affecting DTH's title and rights to the physical property constituting the DTH Archive.

95. DTH is entitled to a declaration that (1) it owns all rights, title, and interest in and to the physical property in the DTH Archive, including all of the property that purportedly was transferred by Defendants Gilbert and Gagnon to Defendant ChromaDiverse and that (2) the Deed of Gift is null and void because Defendants Gilbert and Gagnon did not own the property they purported to transfer in that document.

## FOURTH CAUSE OF ACTION

### Injurious Falsehood Against Defendants Tyrus and ChromaDiverse

96. DTH repeats and realleges the foregoing allegations as if fully alleged herein.

97. DTH owns all right, title, and interest in and to the physical and intellectual property constituting the DTH Archive.

98. Defendants Tyrus and ChromaDiverse made false statements concerning the ownership of the physical and intellectual property constituting the DTH Archive.

99. Defendants Tyrus and ChromaDiverse made these false statements with knowledge or reckless disregard as to their falsity.

100. Defendants Tyrus and ChromaDiverse made these false statements to third parties, namely, in filings in the connection with the California court proceeding; in communications with *Dance Informa* magazine; in posts on Instagram; and in communications with customers, potential customers, or funders of ChromaDiverse.

101. As a result of this wrongful conduct by Defendants Tyrus and ChromaDiverse, DTH has suffered pecuniary harm by virtue of being deprived of the value of licensing its intellectual property to third parties; and by necessitating this action to settle, once and for all, DTH's ownership of and rights to its own archives.

## FIFTH CAUSE OF ACTION

### Injurious Falsehood Against Defendants Gilbert and Gagnon

102. DTH repeats and realleges the foregoing allegations as if fully alleged herein.

103. DTH owns all right, title, and interest in and to the physical and intellectual property constituting the DTH Archive.

104. Defendants Gilbert and Gagnon made false statements concerning the ownership of the physical and intellectual property constituting the DTH Archive.

105. Defendants Gilbert and Gagnon made these false statements with knowledge or reckless disregard as to their falsity.

106. Defendants Gilbert and Gagnon made these false statements to third parties, namely, by signing the Deed of Gift and Copyright Assignment Agreement and providing it to Tyrus and ChromaDiverse, and which (along with an affidavit from Defendant Gagnon) were also filed in connection with a California court proceeding.

107. As a result of this wrongful conduct by Defendants Gilbert and Gagnon, DTH has suffered pecuniary harm by virtue of being deprived of the value of licensing its intellectual property to Tyrus and ChromaDiverse and to third parties; and by necessitating this action to settle, once and for all, DTH's ownership of and rights to its own archives.

**PRAYER FOR RELIEF**

WHEREFORE, DTH respectfully requests a judgment:

(1) declaring that it owns all rights, title, and interest in and to the DTH Archive free and clear of all clouds and encumbrances;

(2) declaring the Deed of Gift, dated May 11, 2022, null and void;

(3) declaring the Copyright Assignment Agreement, dated June 15, 2022, null and void;

(4) ordering that, in the event personal service on Defendants or any of them is not practicable, service of an order directing such Defendant to appear or plead by a day certain may be made on them by publication pursuant to 28 U.S.C. § 1655; and

(5) such other further relief as may be granted.

Dated: April 10, 2025
New York, New York

*/s/ Gregory A. Clarick*
CLARICK GUERON REISBAUM LLP
Gregory A. Clarick
Isaac B. Zaur
Melissa C. Holsinger
41 Madison Ave., 23rd Floor
New York, N.Y. 10010
Telephone: 212.633.4310
Facsimile: 646.478.9484
Email: gclarick@cgr-law.com
        izaur@cgr-law.com
        mholsinger@cgr-law.com

*Attorneys for Plaintiff*
*Dance Theatre of Harlem, Inc.*