**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Case No. 25-cv-02978 (RA)

DANCE THEATRE OF HARLEM, INC.,

                    Plaintiff,

            v.

CHROMADIVERSE, INC., JUDY TYRUS,
HARRIETT GILBERT, SHERRY GAGNON,

And

All photographs, negatives, and related Marbeth
Collection material created by Margaret Elizabeth
Schnare for Dance Theatre of Harlem and located
at 466 West 152nd Street, New York, New York,
*in rem,*

                    Defendants.

# DEFENDANTS' MEMORANDUM OF LAW
# IN SUPPORT OF MOTION



1133 Westchester Avenue | Suite N-200
White Plains, NY 10604
(914) 893-4720
**Attorneys for Defendants**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

PLAINTIFF'S FACTUAL ALLEGATIONS ............................................................. 3

THE PENDING SAN FRANCISCO ACTION ......................................................... 5

ARGUMENT ............................................................................................................. 6

I.    The Case Should Be Dismissed for Lack of Personal Jurisdiction
      Under Rule 12(b)(2). ..................................................................................... 6

      A.    Legal Standard on a Rule 12(b)(2) Motion. ................................... 6

      B.    New York's Long-Arm Statute Does Not Support Jurisdiction. ............... 7
            1. No General Jurisdiction Under CPLR § 301. ................................ 7
            2. No Specific Jurisdiction Under CPLR § 302. ............................... 7

      C.    Constitutional Due Process Bars Jurisdiction. ............................... 8
            1. No Minimum Contacts Exist. ....................................................... 8
            2. Exercising Jurisdiction Would Violate Fair Play and Substantial Justice. .......... 9

      D.    No Jurisdiction Over Tyrus. .......................................................... 9

II.   This Case Should Be Transferred to the Northern District of California
      Where All Pending Matters Between the Parties Can Be Resolved. ................... 10

III.  Alternatively, the Court Should Stay This Action Pending Resolution
      of the San Francisco Action. ........................................................................ 11

IV.   Alternatively, the Fourth and Fifth Claims Should Be Dismissed
      Entirely, and the First and Third Claims Should Be Dismissed as to
      Tyrus, Gilbert, and Gagnon, Pursuant to FRCP 12(b)(6). ...................................... 14

      A.    The Injurious Falsehood Claims Should Be Dismissed. ........................... 14

      B.    The Declaratory Relief Claims Should Be Dismissed Against Tyrus,
            Gilbert and Gagnon, Who Do Not Claim An Interest In the Marbeth
            Collection. ................................................................................. 15

CONCLUSION ......................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

*CASES*

*Am. Girl, LLC v. Zembrka*
118 F.4th 271 (2d Cir 2024) ................................................................ 7, 8

*Angio-Med. Corp. v. Eli Lilly & Co.*
720 F. Supp. 269 (S.D.N.Y. 1989) ........................................................ 14

*Arquest, Inc. v. Kimberly-Clark Worldwide, Inc.*
2008 U.S. Dist. LEXIS 60987 (S.D.N.Y. 2008) .................................... 7

*Ashcroft v. Iqbal*
556 U.S. at 663 ..................................................................................... 16

*Berwick v. New World Network Int'l, Ltd.*
No. 06 Civ. 2641(JGK), 2007 WL 949767, (S.D.N.Y. Mar. 28, 2007) .................... 14

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. United States EPA*
630 F. Supp. 2d 295 (S.D.N.Y. 2009) ................................................... 12

*Chloe v. Queen Bee of Beverly Hills, LLC*
616 F.3d 158 (2d Cir. 2010) ................................................................... 6

*Consol. Edison Co. of N.Y. v. United States*
30 F. Supp. 2d 385 (S.D.N.Y. 1998) ..................................................... 12

*Conte v. Newsday, Inc.*
703 F. Supp. 2d 126 (E.D.N.Y. 2010) ................................................... 15

*CYI, Inc. v. Ja-Ru, Inc.*
913 F. Supp. 2d 16 (S.D.N.Y. 2012) ..................................................... 10

*Daniels v. St. Luke's-Roosevelt Hosp. Ctr.*
No. 02 Civ. 9567(KNF), 2003 WL 22410623 (S.D.N.Y. Oct. 21, 2003) .................. 15

*De Carvalhosa v. Lindgren*
546 F. Supp. 228 (S.D.N.Y. 1982) ........................................................ 12

*Donner v. Der Spiegel GmbH & Co. KG*
747 F. Supp. 3d 681 (S.D.N.Y. 2024) ..................................................... 7

*Dorchester Fin. Sec, Inc. v. Banco BRJ, S.A.*
722 F.3d 81 (2d Cir. 2013) ..................................................................... 6

*Emplrs. Ins. of Wausau v. Fox Ent. Grp., Inc.*
522 F.3d 271 (2d Cir. 2008) ................................................................... 10

*Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*
928 F. Supp. 2d 735 (S.D.N.Y. 2013) ................................................... 10

*Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.*
415 F. Supp. 2d 370 (S.D.N.Y. 2006) ................................................... 10

*Grayson v. Ressler & Ressler*
271 F. Supp. 3d 501 (S.D.N.Y. 2017) ................................................... 14

*Hvide Marine Int'l v. Employers Ins. of Wausau*
724 F. Supp. 180 (S.D.N.Y. 1989) ........................................................................ 8

*In re Cuyahoga Equip. Corp.*
980 F.2d 110 (2d Cir. 1992) .............................................................................. 10

*In re Platinum & Palladium Antitrust Litig.*
61 F.4th 242 (2d Cir. 2023) ................................................................................ 9

*In re Terrorist Attacks on Sept. 11, 2001*
714 F.3d 659 (2d Cir. 2013) ............................................................................... 6

*Int'l Shoe Co. v. Washington*
326 U.S. 310 (1945)............................................................................................ 8

*Johnson v. UBS AG*
791 F. App'x 240 (2d Cir. 2019).......................................................................... 6

*Keeton v. Hustler Magazine, Inc.*
465 U.S. 770 n.13 (1984).................................................................................... 9

*Kirschner v. Large S'holders (In re Tribune Co. Fraudulent Conveyance Litig.)*
10 F.4th 147 (2d Cir. 2021) .............................................................................. 16

*Knox v. Bank of New York*
508 F. Supp. 2d 249 (S.D.N.Y. 2007) ............................................................... 12

*Korova Milk Bar of White Plains v. PRE Properties LLC*
No. 11 Civ. 3327(ER), 2013 WL 417496 (S.D.N.Y. Feb. 4, 2013) ................. 14, 15

*Landis v. N. Am. Co.*
299 U.S. 248 (1936)........................................................................................... 12

*LaSala v. Needham & Co., Inc.*
399 F. Supp. 2d 421 (S.D.N.Y. 2005) ............................................................... 12

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*
676 F.3d 83 (2d Cir. 2012) ................................................................................ 12

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*
599 F.3d 102 (2d Cir. 2010) .............................................................................. 10

*Penguin Grp. (USA) Inc. v. Am. Buddha*
609 F.3d 30 (2d Cir. 2010) .................................................................................. 6

*Rall v. Hellman*
284 A.D.2d 113, 726 N.Y.S.2d 629 (1st Dep't 2001) ......................................... 15

*Robert Lewis Rosen Assoc., Ltd. v. Webb*
No. 03 Civ. 6338 HB, 2003 WL 22801698 (S.D.N.Y. Nov. 24, 2003)................. 12

*Whitaker v. Am. Telecasting, Inc.*
261 F.3d 196 (2d Cir. 2001) ................................................................................ 8

***STATUTES***

28 U.S.C. § 1404(a) .................................................................................................... 10

CPLR § 301 .................................................................................................................. 7

CPLR § 302(a)(1) ......................................................................................................... 7

CPLR § 302(a)(2) ......................................................................................................... 8

CPLR § 302(a)(3) ......................................................................................................... 8

Defendants ChromaDiverse, Inc. ("ChromaDiverse"), Judy Tyrus, Harriet [erroneously spelled "Harriett" in plaintiff's Complaint) Gilbert, and Sherry Gagnon (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss or transfer the Complaint filed by plaintiff Dance Theatre of Harlem, Inc. ("DTH") or, alternatively, to stay this entire action pending resolution of a previously-filed action pending in San Francisco Superior Court, or alternatively, to dismiss the Fourth and Fifth Claims for Relief and all claims against defendants Gilbert, Gagnon and Tyrus, and stay the remainder of this action pending resolution of a previously-filed action pending in San Francisco Superior Court.

## PRELIMINARY STATEMENT

The primary dispute, and the subject of DTH's first three claims, concerns whether DTH or ChromaDiverse owns a collection of photographic images, related content, and property created by Margaret Elizabeth Schnare ("Marbeth"), documenting DTH's activities over several decades ("Marbeth Collection"). (Compl., ¶ 1.)

On April 3, 2023, ChromaDiverse initiated an action against DTH in San Francisco Superior Court, Case No. CGC-23-605571 ("San Francisco Action" or "SFA Compl.") arising from several contracts governing ownership of the Marbeth Collection. (*Id.,* ¶¶ 67-68.) On April 28, 2025, ChromaDiverse filed a Verified First Amended Complaint adding Doris Fiotakis (previously named as DOE 1) as a defendant, which has since been served on both defendants in that case. All references to "SFA Compl." herein are to the Verified First Amended Complaint, which, but for the addition of Ms. Fiotakis as a named defendant and a few other small modifications, essentially tracks all of the allegations of the original Complaint filed in 2023.

As DTH itself acknowledges: "In their California filings, ChromaDiverse take the position that ... ChromaDiverse owns 'the entire photography collection ....'" (*Id.,* ¶ 69.)

1

Rather than litigate these issues in the already-pending San Francisco Action or seek removal of it to the Northern District of California to assert its declaratory relief claims regarding copyright ownership, DTH filed this duplicative action in this District. In doing so, DTH seeks to split a single dispute into separate, competing lawsuits on opposite coasts, raising identical issues. This strategy undermines principles of judicial economy, burdens witnesses with duplicative proceedings thousands of miles apart, creates parallel and duplicative discovery processes, and results in a substantial risk of inconsistent rulings.

More troublingly, DTH alleges that certain pleadings and affidavits filed in the San Francisco Action were false and caused it harm, effectively asking this Court to adjudicate whether filings made in another court are actionable. Principles of comity dictate that such questions should be addressed, if at all, by the court in which those filings were submitted.

This action belongs in San Francisco. No basis exists for personal jurisdiction over any of the defendants in this District. But even if jurisdiction were proper, this case should either proceed in the Northern District of California, where DTH consented to jurisdiction, or be stayed pending resolution of the San Francisco Action, which encompasses the same central dispute raised here. There is no need for duplicative litigation of the same issues in two separate courts.

Should the Court reach the merits, DTH's declaratory relief claims fail for other reasons:

*First*, DTH improperly names individual defendants—Tyrus, Gilbert, and Gagnon—who have not asserted any ownership interest in the Marbeth Collection. The ownership dispute is solely between DTH and ChromaDiverse.

*Second*, DTH improperly invokes supplemental jurisdiction to bring state law claims for injurious falsehood, which arise in part from statements made in pleadings and affidavits filed in the San Francisco Action, and which are otherwise legally deficient.

DTH fails to allege any actionable denigration of its goods or services and does not plead special damages with the required specificity; therefore, these claims must be dismissed.

Accordingly, both the declaratory judgment claims against Tyrus, Gilbert, and Gagnon, and the injurious falsehood claims, should be dismissed.

## PLAINTIFF'S FACTUAL ALLEGATIONS

Marbeth died in 2006. (*Id.*, ¶ 37.) The executors of her estate were Gloria Euler and defendant Gilbert. (*Id.*, ¶ 38.) Shortly after Marbeth's death, Marbeth's friend, Doris Fiotakis, Euler, and Euler's daughter, defendant Sherry Gagnon, visited Marbeth's residence, and by agreement among them, Fiotakis took possession of a collection of materials relating to the Marbeth photographic images. (*Id.*, ¶¶ 40-41.) Gilbert was not present at Marbeth's residence. (*Id.*, ¶ 40.) Fiotakis took possession of the materials and took them to her home in Connecticut. (*Id.*, ¶ 43.) In "2008 or 2009," Fiotakis invited DTH to her home and delivered possession of the materials to DTH. (*Id.*, ¶ 45.) DTH asserts five purported claims:

The First Claim seeks declaratory relief that DTH—not ChromaDiverse—owns the copyrights to the photographic images in the Marbeth Collection. DTH "group pleads" this claim against all Defendants, asserting that "Defendants wrongfully claim an interest adversely affecting DTH's right, title and interest in the copyrights in the Marbeth Collection." (Compl., ¶ 80.) But that claim is not supported by allegations in the Complaint. DTH alleges that Gilbert and Gagnon executed a Copyright Assignment Agreement, acting as the heirs to Marbeth, transferring the copyrights to ChromaDiverse. (*Id.*, ¶ 62.)

Based on that transfer, *ChromaDiverse* asserted in the San Francisco Action that it rightfully owns the Marbeth Collection. (*Id.*, ¶ 62.) The Complaint does not allege that Gilbert, or Gagnon, or Tyrus claim any interest to the Marbeth Collection. They do not.

3

The Second Claim is against ChromaDiverse and Tyrus, for declaratory relief in the alternative, that DTH owns a non-exclusive perpetual license to copyrights in the Marbeth Collection. But the dispute over ownership is between DTH and ChromaDiverse, not Tyrus. (Compl. ¶¶ 66-67, alleging ChromaDiverse claimed ownership.) Similarly, the Third Claim is against all Defendants for a declaration that DTH owns the "physical property" in the Marbeth Collection." (*Id.*, ¶ 100.) That dispute is also solely between DTH and ChromaDiverse.

The Fourth and Fifth Claims are for injurious falsehood. In the Fourth Claim against Tyrus and ChromaDiverse, DTH alleges they made false statements "to third parties, namely, in filings in the [sic] connection with the California court proceedings; in communications with *Dance Informa* magazine; in posts on Instagram; and in communications with customers, potential customers, or funders of ChromaDiverse" about "ownership of the physician and intellectual property" at issue. (*Id.*, ¶¶ 98, 100.) DTH does not state what Tyrus or ChromaDiverse said to *Dance Informa*; rather, it simply alleges that "Dance Informa wrongfully reported that [Marbeth's] heirs had granted ChromaDiverse ownership" of the Marbeth Collection, and DTH is informed and believes this followed "communications from Tyrus and/or ChromaDiverse." (*Id.*, ¶ 72.)

In the Fifth Claim, DTH alleges that Gilbert and Gagnon made "false statements to third parties, namely, by signing the Deed of Gift and Copyright Assignment Agreement and providing it to Tyrus and ChromaDiverse, and which (along with an affidavit from Defendant Gagnon) were also filed in connection with a California court proceeding." (Compl., ¶ 106.)

Neither claim identifies a statement that libeled DTH's goods or services or alleges damages with specificity. All DTH alleges is that Defendants' unidentified statements resulted in DTH "being deprived of the value of licensing its intellectual property to third parties; and by necessitating this action...." (*Id.*, ¶¶ 101, 107.)

## THE PENDING SAN FRANCISCO ACTION

In the San Francisco Action, ChromaDiverse alleges it entered into a Deed of Gift ("Deed") and a Copyright Assignment Agreement ("Copyright Assignment") with Gilbert and Gagnon as the sole legal heirs to the Marbeth Collection. The Deed and Copyright Assignment evidenced the irrevocable transfer of the Marbeth Collection, including an assignment of Marbeth's copyright interest. (SFA Compl., ¶¶ 23-25; Decl. of Judy Tyrus ("Tyrus Decl."), ¶ 10, Exh. A at ¶¶ 20-21; Deed, Tyrus Decl., ¶ 12, Exh. B; Copyright Assignment, Tyrus Decl., ¶ 13, Exh. C.)

ChromaDiverse further alleges in the San Francisco Action that DTH was in possession of thousands of prints, negatives and documents from the Marbeth Collection, and refused to turn them over to ChromaDiverse. (SFA Compl., ¶ 26; Tyrus Decl., ¶ 10, Exh. A at ¶ 23.)

Finally, ChromaDiverse's first cause of action in the San Francisco Action references a certain Materials License Agreement ("MLA") between ChromaDiverse and DTH, in which DTH purported to license to ChromaDiverse certain images from the Marbeth Collection (before ChromaDiverse learned that the rights were actually owned by Marbeth). Under Section 12 of the MLA, ChromaDiverse and DTH agreed that the DLA was "entered into and wholly performed in San Francisco, California" and consented to the jurisdiction and venue of all federal and state courts in San Francisco. (*Id.*, ¶ 6; MLA, Tyrus Decl., ¶ 14, Exh. D at 3.)

The San Francisco Action seeks, *inter alia*, a declaration that "the entire [Marbeth Collection] and all rights, title and interest therein and thereto, including, without limitation, all Marbeth photographs and related materials in the possession, custody or control of [DTH], are owned solely and exclusively by [ChromaDiverse], and that [ChromaDiverse] is entitled to exclusive possession of and control over the Marbeth Collection and any related materials ...." (*Id.*, at 17.)

## ARGUMENT

### I.    The Case Should Be Dismissed for Lack of Personal Jurisdiction Under Rule 12(b)(2).

None of the Defendants reside in New York. Gilbert and Gagnon are Arizona residents, Tyrus resides in California, and ChromaDiverse is a California 501(c)(3) corporation headquartered in San Francisco. (Compl., ¶¶ 7-10.)

None of them maintain systematic or purposeful contacts with New York.

### A.    Legal Standard on a Rule 12(b)(2) Motion.

On a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing that the Court has personal jurisdiction over each defendant. *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010). The Court has "considerable procedural leeway" in resolving such motions and may rely on affidavits alone, permit jurisdictional discovery, or conduct an evidentiary hearing. *Dorchester Fin. Sec, Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013).

At this early stage, the plaintiff must make a *prima facie* showing of jurisdiction. *Id.* In evaluating the pleadings and affidavits, the Court construes the facts in the light most favorable to the plaintiff but need not credit legal conclusions or argumentative inferences. *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013).

The Court may also consider materials outside the pleadings without converting the motion into one for summary judgment. *Johnson v. UBS AG*, 791 F. App'x 240, 241 (2d Cir. 2019).

Further, in federal question cases, personal jurisdiction is analyzed first under the forum state's long-arm statute and then under constitutional due process. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163-164 (2d Cir. 2010).

**B.    New York's Long-Arm Statute Does Not Support Jurisdiction.**

**1.    No General Jurisdiction Under CPLR § 301.**

Under the New York long-arm statute, general jurisdiction exists over non-residents "doing business" in New York. *See* NY CPLR § 301. The Court may exercise personal jurisdiction over an out-of-state defendant if the defendant engages in "continuous and systematic" business activities within New York. *See Arquest, Inc. v. Kimberly-Clark Worldwide, Inc.*, 2008 U.S. Dist. LEXIS 60987, *14-15 (S.D.N.Y. 2008) (citations omitted). "In other words, the plaintiff must show that the defendant is doing business in New York 'with a fair measure of permanence and continuity.'" *Id.,* at *15 (citation omitted).

None of the Defendants are domiciled "at home" in New York. They own no property, maintain no offices, employ no agents and conduct no regular business activities in New York. Thus, general jurisdiction is plainly lacking as to all Defendants. (Tyrus Decl., Gilbert Decl., Declaration of Sherry Gagnon ("Gagnon Decl."), *passim*.)

**2.    No Specific Jurisdiction Under CPLR § 302.**

Under New York law, "to assert long-arm jurisdiction under CPLR § 302(a)(1), the non-domiciliary defendant must 'transact business' within the state and the claim against the foreign defendant must 'arise out of' the defendant's activities within New York." *Donner v. Der Spiegel GmbH & Co. KG*, 747 F. Supp. 3d 681, 689 (S.D.N.Y. 2024).

The "'overriding criterion' is whether the non-domiciliary defendant 'purposefully avails itself of the privilege of conducting activities within New York.'" *Am. Girl, LLC v. Zembrka*, 118 F.4th 271, 278 (2d Cir 2024) (citation omitted). No such contacts exist here.

The transactions at issue—the Deed and Copyright Assignment—were negotiated and executed entirely outside New York, between Arizona and California parties. (Tyrus Decl., ¶ 11; Gilbert Decl., ¶¶ 10-11; Gagnon Decl., ¶¶ 11-12.)

The isolated visit by Gagnon to Marbeth's apartment shortly after Marbeth's death in 2006 (Compl., ¶¶ 40-41) is insufficient to constitute transacting business under § 302(a)(1). *See Hvide Marine Int'l v. Employers Ins. of Wausau,* 724 F. Supp. 180, 184 (S.D.N.Y. 1989) (single, incidental meeting in New York failed to establish jurisdiction under 302(a)(1)).

Nor does CPLR § 302(a)(2) apply because no tortious act was committed in New York. Likewise, CPLR § 302(a)(3) is inapplicable because DTH fails to allege any injury in New York that was directly caused by any purposeful conduct of the Defendants directed toward this forum. *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001).

Thus, New York's long-arm statute does not confer jurisdiction over any of the Defendants.

### C.    Constitutional Due Process Bars Jurisdiction.

Even if New York's long-arm statute were satisfied, exercising jurisdiction would violate due process. Due process requires that a defendant have minimum contacts with the forum such that maintaining the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Am. Girl, LLC v. Zembrka*, 118 F.4th 279-80 (2d Cir. 2024).

#### 1.   No Minimum Contacts Exist.

DTH asserts jurisdiction over Gilbert and Gagnon based on their actions as executors of Marbeth's estate relating to property allegedly located in New York at the time of her death. (Compl., ¶¶ 18-19.) But the Complaint concedes that the property was transferred to Connecticut and ultimately delivered to DTH. (*Id.*, ¶¶ 41, 45.)

The contracts through which ChromaDiverse acquired the Marbeth Collection were negotiated entirely in Arizona and California. (Tyrus Decl., ¶ 11; Gilbert Decl., ¶¶ 10-11; Gagnon Decl., ¶¶ 11-12.) Gilbert and Gagnon have no systematic contacts with New York and do not conduct any business here. The sole alleged contact between Gagnon and New York is her brief visit to Marbeth's apartment in 2006, nearly twenty years ago. (Gagnon Decl., ¶ 9.)  Gilbert did not attend. (Compl., ¶¶ 40-41.) Such minimal, isolated contact cannot establish minimum contacts for personal jurisdiction purposes.

## 2.   Exercising Jurisdiction Would Violate Fair Play and Substantial Justice.

The fair play analysis considers five factors: (1) the burden on defendants; (2) New York's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) judicial economy; and (5) the shared interest of the states in furthering substantive policy. *In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 273 (2d Cir. 2023).

Gilbert, Gagnon and Tyrus live thousands of miles away from New York. (Tyrus Decl., ¶ 3; Gilbert Decl., ¶ 2; Gagnon Decl., ¶ 2.) Gilbert, at 92 years old, is unable to travel to New York; Gagnon likewise would face significant hardship. (Gilbert Decl., ¶ 8; Gagnon Decl., ¶ 6.) While New York may have some interest in adjudicating the dispute, California's interest is stronger, given the pending San Francisco Action that has been ongoing for two years. Judicial economy and efficiency would be best served by resolving all claims in California, either by transferring this action or staying it pending resolution of the earlier-filed San Francisco Action.

## D.      No Jurisdiction Over Tyrus.

Tyrus is a California resident allegedly involved solely in her capacity as an officer or director of ChromaDiverse, a California nonprofit. This is insufficient to establish personal jurisdiction over her. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984).

II.    **This Case Should Be Transferred to the Northern District of California Where All Pending Matters Between the Parties Can Be Resolved.**

Even if this Court finds personal jurisdiction over Defendants, this action should be transferred to the Northern District of California, where all related disputes can be adjudicated in a single forum. 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." District courts have "wide latitude" to decide whether transfer is appropriate. *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 742 (S.D.N.Y. 2013); *see also In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) (transfer decisions left to the sound discretion of district court and require case-by-case evaluation of convenience and fairness).

The transfer analysis involves a two-step inquiry: (1) whether the action could have been brought in the proposed transferee forum; and (2) whether transfer is appropriate based on the convenience of the parties and witnesses and the interests of justice. *Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006). The party seeking transfer bears the burden of making a strong showing, typically under a clear and convincing evidence standard. *CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d 16, 18 (S.D.N.Y. 2012) (citing *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 113-14 (2d Cir. 2010)).

Courts consider several factors in determining if transfer is warranted: (1) plaintiff's choice of forum; (2) convenience of witnesses; (3) location of relevant documents and ease of access to proof; (4) convenience of the parties; (5) locus of operative facts; (6) availability of process to compel unwilling witnesses; (7) relative means of the parties; (8) forum's familiarity with the governing law; and (9) trial efficiency and interests of justice based on the totality of circumstances. *See Emplrs. Ins. of Wausau v. Fox Ent. Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008).

Here, these factors strongly favor transfer:

*First*, DTH's claims could have been brought in the Northern District of California. All witnesses concerning the conveyance of rights through the Deed and Copyright Assignment are on the west coast. ChromaDiverse and Tyrus reside in San Francisco and Gilbert and Gagnon reside in Arizona—making San Francisco far more convenient. (Compl., ¶¶ 8-10; Tyrus Decl., ¶¶ 2-3; Gilbert Decl., ¶¶ 2, 8; Gagnon Decl., ¶¶ 2, 6.) These parties are the central witnesses in both this action and the San Francisco Action, and DTH's claims in this case even reference affidavits executed by Tyrus, Gilbert, and Gagnon in the San Francisco proceedings. Without transfer, Defendants will face duplicative litigation of the same issues in courts thousands of miles apart.

*Second*, DTH cannot claim that litigation in San Francisco would be inconvenient, as it consented to personal jurisdiction and venue in San Francisco under a written agreement with ChromaDiverse. (Compl., ¶ 6; MLA, Tyrus Decl., ¶ 14, Ex. D at 3.) Having contractually agreed to litigate in California, DTH cannot argue that San Francisco is an unfair or inappropriate forum.

*Third*, there is no serious argument that the Northern District of California is unable to fully and fairly adjudicate DTH's copyright claims. Transfer will promote judicial economy, avoid duplicative litigation, and permit comprehensive resolution of all related disputes already pending in the Northern District of California.

## III.    Alternatively, the Court Should Stay This Action Pending Resolution of the San Francisco Action.

Even if this Court were to retain jurisdiction, the Court should stay this case in favor of the already-pending San Francisco Action, which involves the same core dispute. DTH's claims in this case largely arise from ChromaDiverse's pleadings and from testimony and affidavits submitted by Tyrus, Gilbert, and Gagnon in the California proceeding. In these circumstances, judicial economy, efficiency, and comity all strongly support a stay.

The authority to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012). The decision to issue a stay lies "firmly within a district court's discretion." *Catskill Mountains Chapter of Trout Unlimited, Inc. v. United States EPA*, 630 F. Supp. 2d 295, 304 (S.D.N.Y. 2009) (quoting *LaSala v. Needham & Co., Inc.*, 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005)).

Second Circuit courts consider several factors in deciding whether to issue a stay: (1) plaintiff's interest in proceeding expeditiously versus the prejudice of delay; (2) burden on defendants; (3) judicial interests in efficiency and conservation of resources; (4) interests of non-parties; and (5) public interest. *LaSala*, 399 F. Supp. 2d at 427. Ultimately, the concern is avoiding prejudice. *Consol. Edison Co. of N.Y. v. United States*, 30 F. Supp. 2d 385, 389 (S.D.N.Y. 1998).

Where, as here, a parallel proceeding will likely resolve overlapping issues, courts routinely stay duplicative actions to avoid inconsistent rulings and unnecessary expenditures of judicial resources. *See, e.g., Robert Lewis Rosen Assoc., Ltd. v. Webb*, No. 03 Civ. 6338 HB, 2003 WL 22801698, at *9 (S.D.N.Y. Nov. 24, 2003) (stay warranted where related action may "provide complete resolution of the issues between the parties"); *Knox v. Bank of New York*, 508 F. Supp. 2d 249, 251 (S.D.N.Y. 2007) (staying action pending related proceedings); *Consol. Edison Co. of N.Y.*, 30 F. Supp. 2d at 389.

Courts also commonly consider: (1) comity; (2) judicial efficiency; (3) adequacy of relief in the alternative forum; (4) identity of parties and issues; (5) likelihood of prompt disposition; (6) convenience of parties, counsel, and witnesses; and (7) prejudice to any party from the stay. *De Carvalhosa v. Lindgren*, 546 F. Supp. 228, 230 (S.D.N.Y. 1982).

Here, *all* of these factors strongly support a stay in this matter. DTH itself concedes that the core issue—whether the Deed and Copyright Assignment validly transferred ownership of the Marbeth Collection—is already being litigated in the San Francisco Action. DTH alleges that "in their California filings, ChromaDiverse take the position that... ChromaDiverse owns 'the entire photography collection....'" (*Id.,* ¶ 69.) Further, DTH's injurious falsehood claims in this case are premised largely on filings and affidavits submitted in the San Francisco Action. (Compl., ¶¶ 68-69.) It would undermine both comity and judicial efficiency for this Court to adjudicate the propriety of pleadings and affidavits filed in the first-filed San Francisco Action.

Although Gilbert and Gagnon are not parties to the San Francisco Action, the claims asserted against them here arise from the same core allegations being litigated there. For example, DTH asserts that Gilbert and Gagnon made "false statements" by executing the Deed and Copyright Assignment and providing it to Tyrus and ChromaDiverse. (Compl., ¶¶ 104-106.) The injurious falsehood claims against Tyrus and ChromaDiverse similarly rely on statements made in connection with the San Francisco litigation. (*Id.,* ¶ 100.)

Moreover, as detailed above, the relevant witnesses, including Tyrus, Gilbert, and Gagnon, are in California and Arizona, respectively. There is no prejudice to DTH from a stay, since it previously consented to jurisdiction in San Francisco courts to resolve its dispute with ChromaDiverse, and the core issues are already being litigated there. A stay in this matter will avoid wasteful duplication of judicial resources, prevent the risk of inconsistent rulings, and allow the San Francisco Action to proceed to resolution of the overlapping claims.

Accordingly, if this Court does not dismiss or transfer this action, it should, at the very least, stay the case pending the resolution of the San Francisco Action.

IV.     **Alternatively, the Fourth and Fifth Claims Should Be Dismissed Entirely, and the First and Third Claims Should Be Dismissed as to Tyrus, Gilbert, and Gagnon, Pursuant to FRCP 12(b)(6).**

A.     **The Injurious Falsehood Claims Should Be Dismissed.**

The tort of injurious falsehood, sometimes referred to as trade libel, requires more than the mere publication of false statements—it specifically concerns false statements denigrating the quality of a plaintiff's goods or services. As the court explained in *Grayson v. Ressler & Ressler*, injurious falsehood "consists of the knowing publication of false matter derogatory to the plaintiff's business of a kind calculated to prevent others from dealing with the business or otherwise interfering with its relations with others, to its detriment." *Id.,* 271 F. Supp. 3d 501, 518 (S.D.N.Y. 2017) (quotation omitted). In addition to alleging that the statement disparages the plaintiff's goods or services, a plaintiff must also plead: (1) falsity of the statement; (2) publication to a third party; (3) malice; and (4) special damages. *Grayson*, 271 F. Supp. 3d at 518.

Injurious falsehood is distinct from defamation. Defamation concerns statements impugning the general integrity, honesty, or creditworthiness of a person or business, while injurious falsehood requires that the false statements specifically disparage the quality of goods or services offered. *Berwick v. New World Network Int'l, Ltd.*, No. 06 Civ. 2641(JGK), 2007 WL 949767, at *15 (S.D.N.Y. Mar. 28, 2007) (citations omitted). Where statements do not concern the plaintiff's products or services, no claim for injurious falsehood lies. *See id.* (citation omitted); *Angio-Med. Corp. v. Eli Lilly & Co.*, 720 F. Supp. 269, 272–74 (S.D.N.Y. 1989) (distinguishing between claims impugning business honesty, actionable as defamation, and those suggesting product's lack of quality, actionable as injurious falsehood); *Korova Milk Bar of White Plains v. PRE Properties LLC*, No. 11 Civ. 3327(ER), 2013 WL 417496, at *17 (S.D.N.Y. Feb. 4, 2013) (where statements do not relate to quality of goods or services, claim fails).

14

Additionally, a plaintiff must plead special damages with particularity. Allegations of generalized financial harm are insufficient. *Korova Milk Bar*, 2013 WL 417496, at *17 (dismissing claim alleging decrease in patrons and profits as too vague); *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 148–49 (E.D.N.Y. 2010) (plaintiff's conclusory claim of $500 million in damages insufficient without itemization); *Daniels v. St. Luke's-Roosevelt Hosp. Ctr.*, No. 02 Civ. 9567(KNF), 2003 WL 22410623, at *8 (S.D.N.Y. Oct. 21, 2003); *Rall v. Hellman*, 284 A.D.2d 113, 114, 726 N.Y.S.2d 629, 632 (1st Dep't 2001) (plaintiff must identify special damages with sufficient particularity). Here, DTH fails on both fronts.

*First*, it does not identify any statement by Defendants that disparages the quality of DTH's goods or services. Rather, DTH alleges only that Gilbert and Gagnon conveyed rights to ChromaDiverse, and that ChromaDiverse asserted ownership of the Marbeth Collection. These are legal and ownership assertions – not statements denigrating DTH's products or services.

*Second*, DTH fails to allege special damages with the required specificity. Instead, it vaguely claims that it suffered pecuniary harm from being "deprived of the value of licensing its intellectual property" and from "necessitating this action." (Compl., ¶¶ 101, 107.) These conclusory allegations are insufficient to state a claim for injurious falsehood.

For both of these reasons, DTH's injurious falsehood claims fail as a matter of law and should be dismissed entirely.

**B.    The Declaratory Relief Claims Should Be Dismissed Against Tyrus, Gilbert and Gagnon, Who Do Not Claim An Interest In the Marbeth Collection.**

As the Complaint acknowledges, neither Tyrus nor Gilbert nor Gagnon claim any present interest in the Marbeth Collection. Gilbert and Gagnon, as heirs to Marbeth, assigned the rights previously held by Marbeth's estate to ChromaDiverse. (Compl., ¶¶ 58-62, 81, 93.)

Nonetheless, in the First Claim for Relief, DTH alleges "Defendants wrongfully claim an interest adversely affecting DTH's right, title and interest to the copyrights...." (*Id.,* ¶ 80.)  In the Second Claim for Relief, DTH alleges that "ChromaDiverse and Tyrus wrongfully dispute DTH's rights to use and reproduce the photographs...." (*Id.,* ¶ 88.) In the Third Claim For Relief, DTH alleges "Defendants wrongfully claim an interest adversely affecting DTH's title and rights to the physical property...." (*Id.,* ¶ 94.)

Finally, it is firmly established that the Court "need not accept 'threadbare recitals of a cause of action's elements' that are 'supported by mere conclusory statements.'" *Kirschner v. Large S'holders (In re Tribune Co. Fraudulent Conveyance Litig.)*, 10 F.4th 147 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. at 663). Here, the specific allegations in the Complaint demonstrate that the dispute over ownership of the Marbeth Collection is solely between DTH and ChromaDiverse. Since none of the individual defendants make any present claim to ownership, they are not proper defendants to the declaratory relief claims, and those claims should be dismissed as to all three individual defendants—Tyrus, Gilbert and Gagnon.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Defendants respectfully request that: (1) the Complaint be dismissed; or alternatively (2) this action be transferred to the Northern District of California; or alternatively (3) this entire case be stayed pending resolution of the previously-filed San Francisco Action; or alternatively (4) the Fourth and Fifth Claims for Relief be dismissed altogether, that the First, Second and Third Claims for Relief be dismissed as to Tyrus, Gilbert and Gagnon, and that the remainder of this case by stayed pending resolution of the San Francisco Action.

Dated:  June 5, 2025
       White Plains, NY

                   **LACHTMAN COHEN**
                    **& BELOWICH LLP**


                   ***/s/ Brian S. Cohen***
                   Brian S. Cohen (BC-2091)
                   1133 Westchester Avenue
                   Suite N-200
                   White Plains, NY 10604
                   Tel: (914) 893-4720
                   Email: bcohen@lcb-law.com
                   **Attorneys for Defendants**

## <u>CERTIFICATE OF COMPLIANCE PURSUANT TO LOCAL CIVIL RULE 7.1(c)</u>

Brian S. Cohen, undersigned counsel for Defendants, hereby certifies that the number of words in the within the attached memorandum of law, excluding the caption, table of contents, table of authorities, and signature block, is **<u>4,818</u>** according to the word-processing system used to prepare the aforesaid document.

Dated: White Plains, NY
        June 5, 2025

       <u>*/s/ Brian S. Cohen*</u>
       BRIAN S. COHEN