**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DANCE THEATRE OF HARLEM, INC.,

Plaintiff,

v.

CHROMADIVERSE, INC., JUDY
TYRUS, HARRIETT GILBERT,
SHERRY GAGNON,

and

All photographs, negatives, and related
archival material created by Margaret
Elizabeth Schnare for Dance Theatre of
Harlem and located at 466 West 152nd
Street, New York, New York, *in rem*,

Defendants.

Index No. 1:25-cv-002978-RA-VF

**ORAL ARGUMENT REQUESTED**

**PLAINTIFF DANCE THEATRE OF HARLEM, INC.'S OPPOSITION**
**TO DEFENDANT'S MOTION TO DISMISS**

CLARICK GUERON REISBAUM LLP
Gregory A. Clarick
Isaac B. Zaur
Melissa C. Holsinger
Ashley Hall
41 Madison Ave., 23rd Floor
New York, N.Y. 10010
Telephone:  212.633.4310
Facsimile:  646.478.9484
Email: gclarick@cgr-law.com
        izaur@cgr-law.com
        mholsinger@cgr-law.com
        ahall@cgr-law.com

*Attorneys for Plaintiff*
*Dance Theatre of Harlem, Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

PRELIMINARY STATEMENT ........................................................................ 1

FACTUAL BACKGROUND .............................................................................. 3

    Schnare Works for DTH as a Photographer Beginning in 1969 ......................... 3

    After Schnare Died, the DTH Materials Remaining In Her Apartment Are Delivered to DTH, with the Approval of Schnare's Executor and Heirs ................................. 4

    In Her Former Role As DTH's Archivist, Tyrus Works Closely with the DTH Archive and Repeatedly Affirms DTH's Ownership of the Archive and Copyrights Therein ........ 5

    Gilbert and Gagnon Wrongly Purport to Transfer DTH's Physical Property and Copyrights to ChromaDiverse ............................................................... 6

    Tyrus and ChromaDiverse Wrongly Claim that ChromaDiverse Owns the DTH Archive 7

    DTH's Claims in This Action ........................................................... 9

    ChromaDiverse's Claims in the California State Case ................................. 10

ARGUMENT ........................................................................................ 12

I.    THE COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION ............................................................. 12

    A.    This Court Has *In Rem* Jurisdiction Over the DTH Archive ............... 12

    B.    This Court Has *In Personam* Jurisdiction Over ChromaDiverse .......... 14

        1.    DTH's Claims Are Related to ChromaDiverse's Transaction of Business in New York ...................................................... 14

        2.    DTH's Claims Arise From ChromaDiverse's Tortious Conduct Causing Injury to DTH in New York .................................... 16

    C.    This Court Has *In Personam* Jurisdiction Over Tyrus ..................... 17

    D.    This Court Has *In Personam* Jurisdiction Over Gilbert and Gagnon ......... 17

II.    THE COURT SHOULD NOT STAY THIS CASE IN FAVOR OF THE CALIFORNIA STATE CASE .......................................................................... 18

III.    THE COURT SHOULD NOT TRANSFER THIS CASE TO THE NORTHERN DISTRICT OF CALIFORNIA ....................................................... 21

IV.     THE COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS DTH'S
        INJURIOUS FALSEHOLD CLAIMS, AND ITS CLAIMS FOR DECLARATORY
        RELIEF AS TO GILBERT AND GAGNON ................................................................ 25

        A.     The Fourth and Fifth Causes of Action State Claims for Injurious Falsehood ..... 25

        B.     The First and Third Causes of Action State Claims for Declaratory Relief as to
               Gilbert and Gagnon ................................................................................................ 27

CONCLUSION ........................................................................................................................... 27

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                    **Page(s)**

*Astor Holdings, Inc. v. Roski,*
    No. 01-cv-1905, 2002 WL 72936 (S.D.N.Y. Jan. 17, 2002) ...................................................23

*Berwick v. New World Network Int'l, Ltd.,*
    No. 06-cv-2641, 2007 WL 949767 (S.D.N.Y. Mar. 28, 2007)..............................................25

*Bloom v. Emden,*
    No. 19-cv-10155, 2022 WL 799096 (S.D.N.Y. Mar. 16, 2022)............................................13

*Brandner Corp. v. V-Formation, Inc.,*
    No. 96-cv-3163, 1996 WL 312225 (S.D.N.Y. June 11, 1996) ........................................18, 19

*Cable News Network, L.P. v. GoSMS.com, Inc.,*
    No. 00-cv-4812, 2000 WL 1678039 (S.D.N.Y. Nov. 6, 2000)..............................................12

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. EPA,*
    630 F. Supp. 2d 295 (S.D.N.Y. 2009).................................................................................20

*Consol. Edison Co. of N.Y. v. U.S.,*
    30 F. Supp. 2d 385 (S.D.N.Y. 1998)..................................................................................20

*Cunningham v. Hagedorn,*
    72 A.D.2d 702 (1st Dep't 1979) .........................................................................................26

*De Carvalhosa v. Lindgren,*
    546 F. Supp. 228 (S.D.N.Y. 1982)......................................................................................21

*In re Deyette,*
    No. 14926-2005, 16 Misc. 3d 1124(A), 2007 WL 2325181 (N.Y. Sup. Ct. Nassau Cty. 2007)
    .......................................................................................................................................18

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.,*
    722 F.3d 81 (2d Cir. 2013).................................................................................................8

*Egiazaryan v. Zalmayev,*
    No. 11-cv-2670, 2011 WL 6097136 (S.D.N.Y. Dec. 7, 2011) .............................................26

*Erickson Beamon Ltd. v. CMG Worldwide, Inc.,*
    No. 12-cv-5105, 2013 WL 5355010 (S.D.N.Y. Sept. 25, 2013) ...........................................22

*Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.,*
    928 F. Supp. 2d 735 (S.D.N.Y. 2013)................................................................................22

*Freeplay Music, LLC v. Gibson Brands, Inc.,*
    195 F. Supp. 3d 613 (S.D.N.Y. 2016)..................................................................22, 23, 25

iii

*Jones v. E. Brooklyn Sec. Servs. Corp.*,
    No. 11-cv-1021, 2012 WL 3235784 (E.D.N.Y. Aug. 7, 2012) ............................................26

*JustMed, Inc. v. Byce*,
    600 F.3d 1118 (9th Cir. 2010) ....................................................................................12

*Kiss My Face Corp. v. Bunting*,
    No. 02-cv-2645, 2003 WL 22244587 (S.D.N.Y. Sept. 30, 2003) ..............................22, 23, 25

*Kramer v. Time Warner, Inc.*,
    937 F.2d 767 (2d Cir.1991)........................................................................................10

*Lampert v. Edelman*,
    261 N.Y.S.2d 450 (1st Dep't 1965) ............................................................................25

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936).................................................................................................20

*LaSala v. Needham & Co.*,
    399 F. Supp. 2d 421 (S.D.N.Y. 2005).........................................................................20

*In re Lehman Bros. Holdings Inc.*,
    594 B.R. 33 (Bankr. S.D.N.Y. 2018)...........................................................................24

*Levitin v. Sony Music Entm't*,
    101 F. Supp. 3d 376 (S.D.N.Y. 2015).........................................................................15

*Lewis v. Madej*,
    No. 15-cv-2676, 2015 WL 6442255 (S.D.N.Y. Oct. 23, 2015)........................................16

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    732 F.3d 161 (2d Cir. 2013).......................................................................................14

*Lifeguard Lic. Corp. v. Gogo Sports, Inc.*,
    No. 10-cv-9075, 2011 WL 13551092 (S.D.N.Y. Dec. 1, 2011) .......................................15

*Linzer v. EMI Blackwood Music, Inc.*,
    904 F. Supp. 207 (S.D.N.Y. 1995)..............................................................................14

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
    647 F.3d 1218 (9th Cir. 2011) ....................................................................................22

*Mink Hollow Dev. Corp. v. State*,
    87 Misc. 2d 61 (N.Y. Ct. Cl. 1976)..............................................................................26

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)....................................................................................................19

*Murphy-Higgs v. Yum Yum Tree, Inc.*,
    112 F. App'x 796 (2d Cir. 2004) .......................................................................27

*N.B. Garments (PVT), Ltd. v. Kids Int'l Corp.*,
    No. 03-cv-8041, 2004 WL 444555 (S.D.N.Y. Mar. 10, 2004)................................26

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
    599 F.3d 102 (2d Cir. 2010)................................................................................21

*Nat. Res. Def. Council v. U.S. Dep't of Energy*,
    No. 17-cv-989, 2018 WL 1229733 (S.D.N.Y. Mar. 6, 2018)................................24

*Orb Factory, Ltd. v. Design Sci. Toys, Ltd.*,
    6 F. Supp. 2d 203 (S.D.N.Y. 1998)......................................................................23

*Pastime LLC v. Schreiber*,
    705 F. Supp. 3d 95 (S.D.N.Y. 2017)....................................................................12

*Robert Lewis Rosen Assocs., Ltd. v. Webb*,
    No. 03-cv-6338, 2003 WL 22801698 (S.D.N.Y. Nov. 24, 2003).....................20, 21

*Sills v. Ronald Reagan Presidential Found., Inc.*,
    No. 09-cv-1188, 2009 WL 1490852 (S.D.N.Y. May 27, 2009) .......................14, 15

*St. Paul Fire & Marine Ins. Co. v. Novus Int'l, Inc.*,
    No. 09-cv- 01108, 2011 WL 6937593 (S.D.N.Y. Dec. 28, 2011) ..........................24

*Student Advantage, Inc. v. Int'l Student Exch. Cards, Inc.*,
    No. 00-cv-1971, 2000 WL 1290585 (S.D.N.Y. Sept. 13, 2000) ..........................25

*Thomas Pub. Co. v. Indus. Quick Search, Inc.*,
    237 F. Supp. 2d 489 (S.D.N.Y. 2002)...................................................................17

*Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*,
    477 F. Supp. 3d 241 (S.D.N.Y. 2020).....................................................................8

*Wallace Church & Co. v. Wyattzier, LLC*,
    No. 20-cv-01914, 2020 WL 4369850 (S.D.N.Y. July 30, 2020)...........................17

**Other Authorities**

28 U.S.C. § 1338(a) ...............................................................................................12

28 U.S.C. § 1404(a) ...............................................................................................21

28 U.S.C. § 1655 ...................................................................................................13

1909 Copyright Act...................................................................................................9

1976 Copyright Act..................................................................................................9

C.P.L.R. 302(a)(1) ..........................................................................................14, 15

C.P.L.R. 302(a)(3) ................................................................................................16

Fed. R. Civ. P. 12(b)(2)..........................................................................................8

Fed. R. Civ. P. 15(a)(2)..........................................................................................27

Plaintiff Dance Theatre of Harlem, Inc. ("DTH") respectfully submits this Memorandum of Law in opposition to Defendants' motion to dismiss.

## PRELIMINARY STATEMENT

Defendants' motion is a baseless effort to forum shop. This case has deep New York connections to a decades-old, important New York not-for-profit arts institution and seeks to protect that institution's ownership of invaluable assets chronicling its history. The case belongs in this Court. Accordingly, the Court should reject Defendants' misguided effort to seek dismissal, a stay in favor of a California state court case, or transfer to federal court in California.

With this action, DTH seeks to protect its DTH Archive—a historical archive of photographs, negatives, and other materials that photographer Margaret Elizabeth Schnare created for DTH, that evinces DTH's legacy, and that DTH maintains in New York, where it has held the Archive in its entirety since no later than 2009 (and much of it since decades earlier). Defendants' motion to dismiss defies the facts and DTH's claims. As an initial matter, this Court has *in rem* jurisdiction over the physical Archive itself, such that it may issue a declaration of ownership of these materials as against any and all claimants. Defendants do not even attempt to argue otherwise.

Moreover, every Defendant transacted business in New York in connection with DTH's claims concerning its Archive sufficient to confer personal jurisdiction over them. Defendant ChromaDiverse has sought funding and clients in New York using—and holding itself out as the owner of—the DTH Archive and has licensed material from the Archive, harming DTH in New York as a result. Defendant Tyrus directed ChromaDiverse in these efforts, and also previously managed the Archive for DTH for years. Defendant Gilbert, having been named a co-executor of the New York estate of the photographer who took the pictures comprising the DTH Archive, acquiesced to her co- executor's determination that the DTH Archive was not part of the estate

and should be delivered to DTH (having renounced her own co-executorship).  And, Defendant

Gagnon, the daughter of the remaining co-executor, participated in that very conduct by

attending the key meeting (in New York) at which the New York estate admitted it did not own

the DTH Archive and directed its delivery to DTH.  And, all Defendants participated in the

fraudulent scheme to pilfer the DTH Archive from DTH and transfer it to ChromaDiverse,

causing DTH significant harm in New York.  This Court has jurisdiction.

Defendants' alternative requests that the Court stay the case in deference to a California

state court case or transfer to the Northern District of California (where no case is pending) are

equally misguided.  The California state case does not include (nor can it) the central *in rem*

claim in this action seeking to quiet DTH's title to its Archive, which is located in New York.

Nor can that state court adjudicate the copyright ownership issue that this case raises: even

Defendants admit the California court lacks jurisdiction over that exclusively federal question.  A

stay would be senseless.

Transfer makes no sense either.  DTH picked this forum, where it and its Archive are

located, and it is entitled to its choice of forum, no less because the evidence and witnesses

overwhelmingly are located here, not in California—crucially, including the physical Archive

over which DTH seeks a declaration of title, and which comprises some 24 boxes of material.

Indeed, ChromaDiverse's own effort to obtain jurisdiction over DTH in California is a mirage:

its California state court case hangs on the barest of threads, asserting a contract claim against

DTH that baselessly challenges conduct the contract itself expressly describes as "not [] a

breach" and seeking to use that baseless contract claim to bootstrap jurisdiction over DTH.

There is no basis for transfer.

Accordingly, the Court should deny Defendants' motion in its entirety.

2

## FACTUAL BACKGROUND

### Schnare Works for DTH as a Photographer Beginning in 1969

From its inception in New York City in 1969, DTH employed photographer Margaret Elizabeth Schnare (a/k/a "Marbeth") to chronicle its activities and work. (Dkt. 1 ¶ 22.) DTH closely supervised her, paid her, and covered her expenses. (*Id.* ¶¶ 23-24.)

During Schnare's lifetime, both Schnare and DTH treated the photographs she took for DTH—and the copyrights in those images—as belonging to DTH. (*Id.* ¶ 27.) Accordingly, Schnare delivered to DTH many of the photographs that she shot for DTH (*id.* ¶ 28), and DTH has stored those photographs at its New York City space since long before Schnare's death and through the present day (*id.* ¶ 29). DTH has used Schnare's photographs throughout its history, including for marketing and publicity efforts, for souvenir books sold to the public, and to document DTH's storied history. (*Id.* ¶ 26.)

In addition to the materials that Schnare delivered to DTH, Schnare also stored a supplemental collection of photographs and related materials for DTH at her home. (*Id.* ¶ 30.) DTH owned and controlled these materials too, just as it owned and controlled the materials in its physical possession. (*Id.* ¶¶ 30-31.) After Schnare's death, DTH took possession of the supplemental collection of materials stored at Schnare's home as described *infra*, adding it to the materials already in its possession. (*Id.* ¶ 32.)

Collectively, the materials that Schnare provided to DTH during her lifetime and the supplemental collection that DTH took possession of after her death (together, the "DTH Archive") comprise the lion's share of DTH's historical archive of its earliest years. (*Id.* ¶ 33.) In total, this Archive comprises some 24 boxes of physical prints, negatives, and related materials, the historical and artistic value of which are unique and irreplaceable, and which are

3

invaluable from DTH's perspective.  (*Id.*)  The DTH Archive is, at present, in DTH's possession and is located at DTH's headquarters in New York City.  (*Id.* ¶ 34.)

## After Schnare Died, the DTH Materials Remaining In Her Apartment Are Delivered to DTH, with the Approval of Schnare's Executor and Heirs

Schnare died on August 21, 2006.  (*Id.* ¶ 37.)

Her will named two relatives, Gloria Euler and Defendant Harriett Gilbert, as co-executors and residual beneficiaries.  (*Id.* ¶ 38.)  Her will did not purport to bequeath the DTH materials stored in her New York City apartment, nor the materials she had delivered to DTH—consistent with the fact that this material already belonged to DTH.  (*Id.* ¶ 39.)

Shortly after Schnare's death, her close friend Doris Fiotakis visited Schnare's apartment with Euler and Euler's daughter, Defendant Sherry Gagnon.  (*Id.* ¶ 40.)  Defendant Gilbert did not attend and formally renounced her right to act as an executor of the estate.  (*Id.*)  At Schnare's apartment, Euler (the remaining co-executor) agreed that Fiotakis would take possession of the DTH materials from Schnare's apartment and deliver them to DTH, which Fiotakis did.  (*Id.* ¶¶ 40–43.)

Neither Euler, Gilbert, nor Gagnon expressed any ownership or personal interest in the physical photographs or negatives that Schnare had taken for DTH, nor in the copyrights in those works, nor did they object to Fiotakis taking possession of the DTH materials and delivering them to DTH: to the contrary, they endorsed and facilitated this plan.  (*Id.* ¶ 42.)

Fiotakis had the DTH material from Schnare's apartment delivered to her home in Connecticut, where she stored and organized it.  (*Id.* ¶ 43.)  In 2008 or 2009, Fiotakis invited DTH to retrieve that material.  (*Id.* ¶ 45.)  At that time, Defendant Judy Tyrus, who had retired as a principal dancer with DTH, was working as an archivist for DTH.  (*Id.* ¶ 35.)  Tyrus visited Fiotakis in Connecticut (along with others from DTH) and, on behalf of DTH, took possession of

4

the materials from Schnare's apartment then in Fiotakis's possession and personally delivered

that material to DTH, which it has possessed ever since.  (*Id.* ¶ 45.)

**In Her Former Role As DTH's Archivist, Tyrus Works Closely with the DTH Archive and Repeatedly Affirms DTH's Ownership of the Archive and Copyrights Therein**

In the decades since DTH's founding—and the more than fifteen years since Schnare

died—DTH has used the Archive extensively.  (*Id.* ¶¶ 26, 46.)

From 2008 through 2015, Tyrus assisted DTH in these efforts.  While working as an

archivist for DTH, Tyrus curated material from the DTH Archive for various internal and public

purposes on DTH's behalf and never claimed that the Archive (or copyrights therein) belonged

to anyone but DTH.  (*Id.* ¶¶ 35, 47–49; *see* Declaration of Anna Glass, dated July 9, 2025

("Glass Decl.") ¶¶ 10, 12).)

To the contrary: until 2022, Tyrus repeatedly recognized and affirmed DTH's ownership

of the Archive.  (*E.g.*, Dkt. 1 ¶ 50 (Tyrus-curated projected included credit "Copyright held by

Dance Theatre of Harlem"); *id.* ¶ 54 (Tyrus email stating, "ChromaDiverse does certainly does

not want to take ownership of the DTH archive").)

In particular, Tyrus affirmed DTH's ownership of the DTH Archive in 2019, when she

sought DTH's permission to use material from the DTH Archive in a book she was writing about

DTH.  (*Id.* ¶ 51; Glass Decl. ¶ 13.)  At that time, DTH agreed to license material from the DTH

Archive for Tyrus's use in her book through a Materials License Agreement ("License

Agreement") that DTH entered with Tyrus's company, Defendant ChromaDiverse.  (Dkt. 1 ¶¶

51–52; Glass Decl. ¶ 13.) [1]  In the License Agreement, DTH granted ChromaDiverse a non-

---

[1] Tyrus is the principal of ChromaDiverse (Dkt. 1 ¶ 8; Glass Decl. ¶ 11) which, on information and belief, markets a "digital vault" product to performing arts organizations to digitize and preserve archival materials (Dkt. 1 ¶ 36; Glass Decl. ¶ 15).

exclusive right to use "Materials" including "archival materials, information, text, and photographs" owned and controlled by DTH and "provided by DTH to [ChromaDiverse] specifically for inclusion in [Tyrus's planned book]." (Dkt. 1 ¶ 52; Dkt. 22-4 ¶ 1.) With respect to intellectual property, the License Agreement provides that the "rights granted pursuant to this Agreement do not constitute a transfer of any of DTH's right, title or interest in any copyrights, trademarks or any other forms of intellectual property contained in or otherwise relating to the Materials" and that "DTH specifically reserves all such rights, and all of its title and interests therein." (Dkt. 1 ¶ 53; Dkt. 22-24 ¶ 1.) And, while DTH agreed in the License Agreement to "use good faith efforts to assist [ChromaDiverse] in its efforts to promote [Tyrus's book]," the Agreement specifically stipulated that "any failure [by DTH] to provide such assistance will not be a breach of this Agreement." (Dkt. 22-4 ¶ 6.)

Tyrus's book about DTH was published on October 26, 2021. (Dkt. 1 ¶ 55; Glass Decl. ¶ 14.) In the months leading up to publication, the relationship between Tyrus and DTH soured when Tyrus took issue with DTH's constructive criticism of a draft of the book focused on the need for further development and editing. (*Id.* ¶ 56.) Tyrus seemed to perceive DTH's views as inadequate support of her effort to publish and promote the book. (*Id.*)

**Gilbert and Gagnon Wrongly Purport to Transfer DTH's Physical Property and Copyrights to ChromaDiverse**

On information and belief, in 2021 or 2022, Tyrus contacted Fiotakis, ostensibly about Tyrus's plan to write a book about Schnare. (*Id.* ¶ 57.) Tyrus instead steered the conversation to ask Fiotakis about the identity of Schnare's relatives—Euler, Gilbert, and Gagnon—and the ownership of photographs Schnare took for DTH. (*Id.*)

In 2022 (shortly after Tyrus learned the identity of Schnare's heirs from Fiotakis), Defendants Gilbert and Gagnon purported to transfer and assign to ChromaDiverse certain

physical property and copyrights in the DTH Archive by signing two documents: a "Deed of Gift" and a "Copyright Assignment Agreement." (*Id.* ¶¶ 57–62; *see* Dkt. 22-2; Dkt. 22-3.)

The Deed of Gift, dated May 11, 2022, recited (falsely) that Gilbert and Gagnon "own all tangible and intangible property rights, title and interest in and to" the items on an attached inventory list and purported to transfer all "rights, title and interest" in those items, "inclusive of all copyrights," to ChromaDiverse. (*Id.* ¶ 60; Dkt. 22-2.) The attached inventory listed 16 boxes of materials labelled "DTH" (along with a number of other boxes labelled with the names of other arts institutions and individuals). (Dkt. 1 ¶ 61; Dkt. 22-2 Ex. A.)

The Copyright Assignment Agreement, which Gilbert and Gagnon executed approximately one month later on June 15, 2022, referenced the Deed of Gift, attached an inventory identical to that attached to the Deed of Gift; and purported to "convey, transfer and assign" to ChromaDiverse all right, title, and interest in the copyrights in the items listed on the inventory. (Dkt. 1 ¶ 62; Dkt. 22-3.)

## Tyrus and ChromaDiverse Wrongly Claim that ChromaDiverse Owns the DTH Archive

Since Gilbert and Gagnon executed the Deed of Gift and Copyright Assignment Agreement in 2022, ChromaDiverse has claimed ownership of the Archive in various public statements (including by its principal, Tyrus), sought DTH's acknowledgement of ChromaDiverse's supposed ownership of the copyrights in the Archive, and sought physical possession of the Archive, all for its own commercial benefit and under the guise of the (ineffective and null) transfer from Gilbert and Gagnon. (Dkt. 1 ¶¶ 65–74; Glass Decl. ¶ 20.)

On July 18, 2022, ChromaDiverse's counsel sent DTH a letter claiming "all rights in and to The Marbeth Photographic Collection" and demanding that DTH hand over "any and all photographs taken by Marbeth (whether originals, copies or backups thereof) and all other

7

materials, documents and things . . . that are part of the Collection, in [DTH's] possession, custody or control." (Dkt. 1 ¶ 66.) Also in July 2022, the digital dance magazine *Dance Informa* reported that Schnare's heirs had granted ChromaDiverse ownership of the "Marbeth Photographic Collection"—reporting that, on information and belief, followed communications from Tyrus and/or ChromaDiverse. (*Id.* ¶ 72.) And, Tyrus reported the purported transaction of the DTH Archive to ChromaDiverse in a July 19, 2022 post on her personal Instagram account. (*Id.* ¶ 73.) More recently, ChromaDiverse posted photographs from the DTH Archive on its Instagram account with the (false) credit "courtesy of ChromaDiverse." (*Id.* ¶ 74.)

Moreover, ChromaDiverse and Tyrus have used materials from the DTH Archive— which they obtained in connection with the preparation of Tyrus's book or during her tenure as DTH's archivist—to their own ends, to DTH's pecuniary harm. (*Id.* ¶ 70.) Specifically, ChromaDiverse has licensed images from the DTH Archive to third parties (*id.*; Glass Decl. ¶ 21)[2] and admits that it derives "essential" revenue from doing so (Dkt. 22-1 ¶¶ 38, 48; Glass Decl. ¶ 21).

ChromaDiverse also has clients in New York to whom it provides goods and services. (Glass Decl. ¶ 16.) And, on information and belief, ChromaDiverse has used images from the DTH Archive to market its "digital vault" product to potential clients and funders in New York, using digitized versions of DTH's copyrighted materials as a means of demonstrating the "digital vault" to show its capabilities. (Dkt. 1 ¶ 70; Glass Decl. ¶ 15.) Also, on information and belief,

---

[2] In ruling on a jurisdictional motion, the Court has "considerable procedural leeway" to consider affidavits or permit jurisdictional discovery. *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013); *see also Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*, 477 F. Supp. 3d 241, 245 n.1 (S.D.N.Y. 2020) ("On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court may look beyond the four corners of the complaint and consider materials outside of the pleadings, including accompanying affidavits, declarations, and other written materials.").

ChromaDiverse and Tyrus are frequently present in New York for the purpose of soliciting customers and funders for ChromaDiverse (using the DTH Archive—and holding itself out as the owner of the Archive—in the process).  (Glass Decl. ¶¶ 15–18.)  Tyrus also has cause to travel to New York for personal purposes (as she has family here) in addition to her professional obligations to ChromaDiverse.  (*Id.* ¶ 19.)  And, given public questions over its ownership of the Archive, DTH itself has been unable to license images from the Archive, whereas ChromaDiverse has earned revenue from doing so having falsely claimed that it, and not DTH, owns the Archive.  (Dkt. 22-1 ¶¶ 38, 48; Glass Decl. ¶¶ 22–23.)

**<u>DTH's Claims in This Action</u>**

DTH brought this suit to settle any question as to its ownership of its own archive.  Key witnesses and evidence include DTH's leadership (and leadership emeriti), all of whom are in New York or proximate thereto; third parties who were present at key events such as the meeting at Schnare's apartment, including Schnare's close friend, Fiotakis, who resides in Connecticut; and DTH's documents and other materials—including, most vitally, the Archive itself—all of which are located in New York.

DTH's first claim seeks a declaration that it owns the copyrights in the DTH Archive, which was created as a work-for-hire under the terms of either the 1909 Copyright Act or the 1976 Copyright Act.  (Dkt. 1 ¶¶ 77–82.)

DTH's second claim alternatively seeks a declaration that DTH has a non-exclusive perpetual license to use and reproduce the copyrights in the DTH Archive.  (*Id.* ¶¶ 83–90.)

DTH's third claim seeks a declaration that it owns the physical property in the DTH Archive, which was created as a work-for-hire or which, alternatively, passed to DTH from Schnare or her heirs, either during or after Schnare's lifetime.  (*Id.* ¶¶ 91–95.)

DTH's fourth claim seeks damages from Tyrus's and ChromaDiverse's injurious falsehood, arising out of their false statements concerning the ownership of the DTH Archive, including in communications with *Dance Informa* magazine, in posts on Instagram, and in communications with customers, potential customers, or funders of ChromaDiverse. (*Id.* ¶¶ 96–101.)

DTH's fifth claim seeks damages from Gilbert's and Gagnon's injurious falsehood, which arises out of their false statements concerning the ownership of the DTH Archive in the Deed of Gift and Copyright Assignment Agreement. (*Id.* ¶¶ 102–107.)

**ChromaDiverse's Claims in the California State Case**

ChromaDiverse has filed a lawsuit against DTH in state court in California primarily asserting a claim for breach of the License Agreement, along with thinly-pleaded tort claims and a claim for a declaratory judgment over which the state court lacks jurisdiction. *See ChromaDiverse, Inc. v. Dance Theatre of Harlem et al.*, No. CGC-23-605571 (Ca. Super. Ct. S.F. Cty.) (the "California State Case"); *see also* Dkt. 22-1.[3]

Though the California State Case was filed on May 3, 2023, it was stayed, with ChromaDiverse's consent, for nearly two years. (California State Case, Stipulation (June 8, 2023), Order (Apr. 25, 2025); Glass Decl. ¶ 24.)) Shortly after the stay was lifted in April of this year, ChromaDiverse amended its complaint, but no substantive developments have occurred in the case to date: DTH has not yet responded to the amended complaint and will file its demurrer and motion to quash the pleading on July 23, 2025; Fiotakis (whom ChromaDiverse added as a

---

[3] This Court may take judicial notice of the California State Case. *E.g.*, *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir.1991) ("[C]ourts routinely take judicial notice of documents filed in other courts....").

defendant in the California State Case) has not yet been properly served; and discovery has not commenced, nor has a discovery schedule been set.  (Glass Decl. ¶ 24.)

In its first claim, ChromaDiverse asserts that DTH breached the covenant of good faith and fair dealing in the License Agreement by allegedly failing to support and promote Tyrus's book (Dkt. 22-1 ¶¶ 29–35), despite the Agreement's express bar against claims concerning DTH's support of the book (Dkt. 22-4 ¶ 6 ("any failure" by DTH to provide "assistance" to ChromaDiverse "in its efforts to promote" Tyrus's book "will not be a breach of this agreement")).

ChromaDiverse also alleges that DTH's alleged criticism of Tyrus and her book constituted business disparagement (Dkt. 22-1 ¶¶ 15–17, 56–62 (fourth claim)), and that DTH interfered with economic relations by allegedly failing to acknowledge ChromaDiverse's (purported) ownership of the DTH Archive (*id.* ¶¶ 36–55 (second and third claims)).

ChromaDiverse also asserts that DTH converted the DTH Archive by refusing to deliver it to ChromaDiverse, and it recently added a conversion claim against Fiotakis on the grounds that she retained some of the DTH Archive at her home.  (*Id.* ¶¶ 63–68 (fifth claim).)

Finally, ChromaDiverse seeks a declaration of its "sole and exclusive ownership and right to possession of all photographs and related materials belonging to the Marbeth Collection"[4] and an injunction directing DTH to deliver the DTH Archive to ChromaDiverse and

---

[4] In its California filings, ChromaDiverse takes the position that, by virtue of the Deed of Gift and Copyright Assignment Agreement, it owns "the entire photography collection of Margaret Elizabeth Schnare"—seemingly claiming ownership not just of those materials that were in Schnare's apartment at the time of her death, but of every single photograph and negative taken by Schnare for DTH since DTH's inception, many of which have been in DTH's possession since before Sc:hare's death, and all of which has been in DTH's possession since 2009 at the latest.  (Dkt. 1 ¶ 69; Dkt. 22-1 ¶¶ 3, 23–24.)

prohibiting DTH from using material from the DTH Archive without ChromaDiverse's consent. (*Id.* ¶¶ 69–72 (sixth claim).)

ChromaDiverse's claims in the California State Case are infirm for many reasons, but most critically—for the purposes of this Court—because they raise a question of federal copyright law over which the California state court lacks jurisdiction. *See JustMed, Inc. v. Byce*, 600 F.3d 1118, 1124–25 (9th Cir. 2010); *Pastime LLC v. Schreiber*, 705 F. Supp. 3d 95, 102–03 (S.D.N.Y. 2017); *see also* 28 U.S.C. § 1338(a) (federal copyright jurisdiction is exclusive). Indeed, Defendants concede this: they admit that the California State Case involves the "same core dispute" as DTH's copyright claims here (that is, DTH's first and second causes of action) and that these claims "are subject to exclusive federal jurisdiction." (Dkt. 25 at 11; *see* Dkt. 19 at 3.)

## ARGUMENT

## I.    THE COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

A motion to dismiss under Fed. R. Civ. P. 12(b)(2) is defeated if the plaintiff's complaint and affidavits "establish a prima facie showing of jurisdiction." *Cable News Network, L.P. v. GoSMS.com, Inc.*, No. 00-cv-4812, 2000 WL 1678039, at *1 (S.D.N.Y. Nov. 6, 2000). "[T]he court must assume the truth of the plaintiffs' factual allegations, even in light of defendants' 'contrary allegations that place in dispute the factual basis of plaintiff[s'] prima facie case.'" *Id.* (citation omitted). DTH has made a prima facie showing of both *in rem* and *in personam* jurisdiction.

### A.    This Court Has *In Rem* Jurisdiction Over the DTH Archive

Defendants have not and cannot dispute that this Court has *in rem* jurisdiction over the physical DTH Archive, such that the Court may "determine title to, or the status of" the DTH

Archive because it is "physically located within the court's jurisdiction." *Bloom v. Emden*, No. 19-cv-10155, 2022 WL 799096, at *5 (Abrams, J.) (S.D.N.Y. Mar. 16, 2022); *see also* 28 U.S.C. § 1655 (permitting federal district court to "remove any incumbrance or lien or cloud upon the title to, real or personal property within the district" and providing for order directing appearance of defendant "who cannot be served within the State or does not voluntarily appear").

*In rem* jurisdiction provides "an alternative to *in personam* jurisdiction" and permits the Court to "issue a declaratory judgment determining title to property in its district" that "will be binding on all persons who have an interest in that property." *Bloom*, 2022 WL 799096, at *6. "The fact that the court cannot obtain jurisdiction over the person of all defendants or claimants to the property is considered irrelevant to whether in rem jurisdiction is constitutionally permissible." *Id.* (quotation and alternation omitted). And, although the "minimum contacts" test that governs the application of due process applies, "where claims to the property itself are the source of the underlying controversy, due process concerns will most likely be satisfied." *Id.* at *6. Indeed, this Court has held that an "ownership claim" to property in the District, coupled with New York's "strong interests in assuring the marketability of property within its borders and in providing a procedure for peaceful resolution of disputes about the possession of that property" are sufficient to establish minimum contacts for due process purposes. *Id.* at *6.

So too here: Defendants ChromaDiverse, Gilbert, and Gagnon each have claimed an interest in DTH's physical property—Gilbert and Gagnon when they purported to transfer that property to ChromaDiverse in 2022, and ChromaDiverse ever since.[5]  Moreover,

---

[5] DTH will voluntarily dismiss its first, second, and third causes of action as to Tyrus individually.

ChromaDiverse, Gilbert, and Gagnon each have minimum contacts with New York that satisfy due process.  (*See infra* Section I.B–I.D.)

Defendants have not contested *in rem* jurisdiction and, accordingly, the Court has such jurisdiction and should deny the motion to dismiss.

**B.    This Court Has _In Personam_ Jurisdiction Over ChromaDiverse**

       **1.    DTH's Claims Are Related to ChromaDiverse's Transaction of Business in New York**

Personal jurisdiction exists where a defendant "transacts any business within the state or contracts anywhere to supply goods and services in the state."  C.P.L.R. 302(a)(1).  There need not be "a causal link" between a transaction and the injury, but merely "relatedness" such that "the latter is not completely unmoored from the former."  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168–69 (2d Cir. 2013).

ChromaDiverse transacts business in New York by providing goods or services to customers in New York, receiving funding from donors in New York, and regularly soliciting business and funding from potential customers and donors in New York, including through its physical presence in New York to meet with such customers and donors (and potential customers and donors).  (Dkt. 1 ¶¶ 36, 70; Glass Decl. ¶¶ 16–18.)  And, it has licensed the DTH Archive to third parties, including, on information and belief, in New York.  (Dkt. 1 ¶¶ 36, 70; Glass Decl. ¶ 21.)  This conduct constitutes the "transaction of business" under C.P.L.R. 302(a)(1).  *E.g.*, *Sills v. Ronald Reagan Presidential Found., Inc.*, No. 09-cv-1188, 2009 WL 1490852, at *8 (S.D.N.Y. May 27, 2009) (soliciting donations from New York sources constitutes transaction of business); *Linzer v. EMI Blackwood Music, Inc.*, 904 F. Supp. 207, 213 (S.D.N.Y. 1995) (licensing songs for use in New York constitutes transaction of business).

14

And, crucially, this transaction of business is related to DTH's claims concerning the DTH Archive.  ChromaDiverse uses the DTH Archive to demonstrate its products and services to potential New York customers and funders using images from the DTH Archive.  (Dkt. 1 ¶¶ 36, 70; Glass Decl. ¶ 15.)  In doing so, it holds itself out as the owner of the DTH Archive.  (Dkt. 1 ¶¶ 36, 70; Glass Decl. ¶ 20; *see also* Dkt. 1 ¶¶ 65–86.)  And, it obtained these images from DTH in New York either in connection with the License Agreement it entered with DTH, or during Tyrus's tenure as an archivist for DTH in New York.  (Dkt. 1 ¶ 70.)  Accordingly, there is a nexus between this matter—in which DTH seeks to adjudicate ChromaDiverse's (false) claims that it owns the DTH Archive—and ChromaDiverse's transaction of business in New York.  *See Levitin v. Sony Music Entm't*, 101 F. Supp. 3d 376 (S.D.N.Y. 2015) (specific jurisdiction exists where defendant obtained and distributed recording in New York, marketed product in New York, and where product was derived from recordings made in New York).

ChromaDiverse's contacts establish jurisdiction under C.P.L.R. 302(a)(1) and, moreover, demonstrate the ChromaDiverse purposefully availed itself of the benefits of conducting activities in New York, such that it should have reasonably anticipated being subject to suit here, satisfying the requirements of due process.  *See Sills*, 2009 WL 1490852, at *10 (satisfaction of 302(a)(1) "will generally meet federal due-process requirements," and does so where defendant solicited funding in New York); *see also Lifeguard Lic. Corp. v. Gogo Sports, Inc.*, No. 10-cv-9075, 2011 WL 13551092, at *1 (S.D.N.Y. Dec. 1, 2011) (due process satisfied where defendant had New York-based clients and solicited New York customers, and was alleged to have infringed mark of New York plaintiff).

15

2.    **DTH's Claims Arise From ChromaDiverse's Tortious Conduct Causing Injury to DTH in New York**

Personal jurisdiction also exists where a defendant's tortious conduct injured a plaintiff in New York, if the defendant "regularly does or solicits business in New York, or engages in any other persistent course of conduct, or derives substantial revenue" from New York, or "expects or reasonably should expect the act to have consequences in the state and derives substantial revenue" from interstate commerce.  C.P.L.R. 302(a)(3).

Here, ChromaDiverse's tortious conduct injured DTH in New York—just as ChromaDiverse intended—by preventing DTH from using its own Archive (Glass Decl. ¶ 22) and depriving DTH of the value of licensing the DTH Archive including, on information and belief, to third parties in New York (Dkt. 1 ¶ 70; Glass Decl. ¶¶ 21–23 ).  *See Lewis v. Madej*, No. 15-cv-2676, 2015 WL 6442255, at *5 (S.D.N.Y. Oct. 23, 2015) (exercising jurisdiction over defendant who sought to prevent New York domiciliary from using its own intellectual property because conduct was "specifically directed at the plaintiffs who reside in New York").

And, ChromaDiverse regularly does business, and solicits business and funding, in New York (Dkt. 1 ¶ 70; Glass Decl. ¶¶ 16–18) and admits that it derives "essential" revenue from licensing the DTH Archive (including, on information and belief, to New York entities) thus engaging in interstate commerce (Dkt. 1 ¶ 70; Dkt. 22-1 ¶¶ 38, 48; Glass Decl. ¶ 21).  Moreover, ChromaDiverse (and its principal, Tyrus) have a long history with DTH such that ChromaDiverse knew full well that its conduct would impact DTH in New York.  (Dkt. 1 ¶¶ 45–54; Glass Decl. ¶¶ 10–13.)  Such conduct establishes jurisdiction under 302(a)(3) and also satisfies due process.  *See  Lewis*, 2015 WL 6442255, at *6 (due process satisfied where defendant who allegedly interfered with plaintiff's ability to obtain trademark "knew that the brunt of the injury would be felt in the forum state," where plaintiff was domiciled).

16

### C.    This Court Has *In Personam* Jurisdiction Over Tyrus

*In personam* jurisdiction over Tyrus is just as easily shown.  Tyrus engaged in tortious conduct by making statements in which she claimed, falsely, that ChromaDiverse owns the DTH Archive (Dkt. 1 ¶¶ 68, 72–73; Glass Decl. ¶ 20), which caused injury to DTH in New York (*see supra*).  And, as principal of ChromaDiverse, Tyrus travels frequently to New York, and regularly solicits customers and funders in New York, using images from the DTH Archive in doing so.  (Dkt. 1 ¶ 70; Glass Decl. ¶¶ 16–19.)

Moreover, given that Tyrus is ChromaDiverse's principal and that ChromaDiverse is subject to jurisdiction here (*see supra*), Tyrus is as well.  *See Wallace Church & Co. v. Wyattzier, LLC*, No. 20-cv-01914, 2020 WL 4369850, at *6 (S.D.N.Y. July 30, 2020) ("C.P.L.R. 302 allows courts to exercise specific jurisdiction over corporate principals based on transactions made or acts taken in a corporate capacity"); *Thomas Pub. Co. v. Indus. Quick Search, Inc.*, 237 F. Supp. 2d 489, 492 (S.D.N.Y. 2002) (personal jurisdiction exists over CEO based on personal jurisdiction over corporation).  Finally, the exercise of such jurisdiction over Tyrus comports with due process.  *See Thomas*, 237 F. Supp. 2d at 493.

### D.    This Court Has *In Personam* Jurisdiction Over Gilbert and Gagnon

This Court has jurisdiction over Gilbert and Gagn.on because of their roles administering Schnare's estate and distributing her property after her death, which relates to DTH's claims.

Specifically, Gilbert was named one of two co-executors of Schnare's estate in Schnare's will.  (Dkt. 1 ¶ 38.)  Gilbert then signed a legal document renouncing that role (leaving Euler as the sole executor of the estate) and declined to participate in the distribution of property in Schnare's apartment (which included parts of the DTH Archive) (*id.* ¶ 40)—acquiescing to Euler's determinations as to the contents of the estate and the delivery of the Archive to DTH.

That was where Gagnon stepped in: she joined Euler (the sole remaining executor, and Gagnon's mother) and Schnare's friend Fiotakis at Schnare's apartment to distribute Schnare's property, and that portion of the DTH Archive then stored in Schnare's apartment. (*Id.* ¶¶ 40-43.) Euler and Gagnon agreed that Fiotakis would take the DTH materials and deliver them to DTH, which she did. (*Id.* ¶¶ 40-43.)

These steps, which Gilbert and Gagnon took in connection with Schnare's New York estate, constitute the transaction of business in New York. *In re Deyette*, No. 14926-2005, 16 Misc. 3d 1124(A), 2007 WL 2325181, at *4 (N.Y. Sup. Ct. Nassau Cty. 2007) (*de facto* trustee is, like named trustee, subject to transacting-business jurisdiction "in connection with issues arising from the trust"). And, DTH's claims are related because Gilbert and Gagnon later falsely claimed to own the DTH Archive and transfer it to ChromaDiverse based on their roles in connection with Schnare's estate. Accordingly, personal jurisdiction exists and comports with due process. *See id.*

## II.    THE COURT SHOULD NOT STAY THIS CASE IN FAVOR OF THE CALIFORNIA STATE CASE

Defendants submit no legitimate basis for the Court, alternatively, to stay this action pending resolution of the California State Case. (Dkt. 25 at 11–13.)[6]

A federal court may abstain in favor of a state court action only in "exceptional circumstances." *Brandner Corp. v. V-Formation, Inc.*, No. 96-cv-3163, 1996 WL 312225, at *4 (S.D.N.Y. June 11, 1996). "Courts must apply the 'exceptional circumstances' test not only when determining whether to dismiss a federal action in favor of a concurrent litigation pending

---

[6] The parties submitted letters to Magistrate Judge Figueredo with respect to Defendants' request for a stay of *discovery*. (Dkt. 34 and 36.) This brief addresses Defendants' broader request for a stay of this *action*.

in state court, but also when determining whether to stay such an action." *Id.* at *4 n.3.  In

applying this test, the Court must consider (1) whether "either court" has jurisdiction "over *res* or

property"; (2) the "inconvenience of the federal forum"; (3) the "avoidance of piecemeal

litigation"; (4) the "order in which jurisdiction was obtained by the concurrent fora, and the

progress of the federal court litigation"; (5) "whether state or federal law supplies the rule of

decision"; and (6) "whether the state court proceeding will adequately protect the rights of the

party seeking to invoke federal jurisdiction." *Id.* at *4.  This test is not "mechanical" but requires

"careful balancing" of the factors "with the balance heavily weighted in favor of the exercise of

jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

These factors favor DTH decisively and compel denial of Defendants' stay application:

*First*, this Court has jurisdiction over the *res*—the DTH Archive, which is located in this

District—which the California state court lacks.  Indeed, Defendants do not dispute this.  (*See

generally* Dkt. 25.)

*Second*, though Defendants are located in California and Arizona, DTH and other key

witnesses and documentary evidence, *as well as the Archive itself*, are located here.  Indeed,

regardless of where this case proceeds, discovery may involve the physical inspection of the

Archive—which comprises 24 boxes of materials located at DTH's headquarters in Harlem—as

well as testimony from New York-based witnesses and the production of significant materials

located in New York.  Accordingly, the convenience factor favors the exercise of jurisdiction.

*Third*, this case involves claims and parties that are not present in the California State

Case—namely, copyright claims (over which the California state court lacks jurisdiction), and

defendants Gilbert and Gagnon (who are not parties in the California State Case)—favoring the

exercise of jurisdiction.  *Brandner*, 1996 WL 312225, at *4 (denying stay where state court

"lacks jurisdiction" over patent claims and involves "parties and claims not before the state court").[7]

*Fourth*, although the California State Case was initiated in 2023, the parties agreed to stay that case for two years (California State Case, Stipulation (June 8, 2023), Order (Apr. 25, 2025)), such that this federal case has now progressed further, favoring jurisdiction here.

The *fifth* and *sixth* factors also favor jurisdiction: because this case entails application of federal law to DTH's copyright claims and the federal courts have exclusive jurisdiction over these claims, DTH's copyrights cannot be adjudicated in the California State Case. *See Robert Lewis Rosen Assocs., Ltd. v. Webb*, No. 03-cv-6338, 2003 WL 22801698, at *10 (S.D.N.Y. Nov. 24, 2003) (denying stay where "no other forum was then adjudicating the dispute").

Under the "exceptional circumstances" test, a stay is not appropriate.

In their papers, Defendants do not apply (or even cite) the "exceptional circumstances" test. Instead, they cite only inapplicable cases where courts considered whether to stay a matter while another *federal* proceeding was pending—unlike here, where Defendants seek a stay pending a state matter—and applied a test that balances the interests of the parties, the court, non-parties, and the public. *See LaSala v. Needham & Co.*, 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936); *Catskill Mountains Chapter of Trout Unlimited, Inc. v. EPA*, 630 F. Supp. 2d 295, 304 (S.D.N.Y. 2009); *Consol. Edison Co. of N.Y. v. U.S.*, 30 F. Supp. 2d 385, 389 (S.D.N.Y. 1998). Defendants also cite a test that involves consideration of seven factors, including the interest of comity, the interest of judicial

---

[7] ChromaDiverse recently added Schnare's friend Doris Fiotakis (who is in her nineties and resides in Connecticut) as a defendant in the California State Case. Though Fiotakis should not be a party in that case at all—given the lack of personal jurisdiction over her in California and ChromaDiverse's threadbare conversion allegation—litigating in New York would be more convenient for her in any event.

efficiency, the adequacy of available relief in the other forum, the identity of parties and issues, and prejudice arising from a stay. *See De Carvalhosa v. Lindgren*, 546 F. Supp. 228, 230 (S.D.N.Y. 1982).

But even if either of these tests applied, a stay still is not warranted. Most crucially, there is "no other forum" currently "adjudicating the dispute." *Robert Lewis Rosen Assocs., Ltd. v. Webb*, No. 03-cv-6338, 2003 WL 22801698, at *10 (S.D.N.Y. Nov. 24, 2003) (denying stay given lack of another proceeding). That is, the California state court does not have jurisdiction over DTH's copyright claims, and the *in rem* claim and claims against Gilbert and Gagnon will proceed in this forum, in any event. Accordingly, the interests of comity and judicial efficiency do not favor a transfer; DTH cannot obtain adequate relief in California state court; the parties and issues are not the same; and DTH faces the prejudice of not having its copyright claims adjudicated for the duration of the California State Case should this Court issue a stay.

A stay is not warranted.

## III.    THE COURT SHOULD NOT TRANSFER THIS CASE TO THE NORTHERN DISTRICT OF CALIFORNIA

Defendants have not carried their burden of showing, by clear and convincing evidence, that the convenience of the parties and the witnesses, and the interests of justice, warrant transfer. 28 U.S.C. § 1404(a); *see N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 113–114 (2d Cir. 2010). They do not.

In the first instance, DTH is domiciled in New York, not in California. DTH is not incorporated under the laws of the State of California. (Glass Decl. ¶ 2.) Its principal place of business is not in California. (*Id.* ¶ 3.) It has no offices or employees in California. (*Id.* ¶ 4.) It does not conduct any regular business activities in California. (*Id.* ¶ 5.) Accordingly, there is no jurisdiction over DTH in California. *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d

1218, 1223 (9th Cir. 2011) (general jurisdiction over a foreign entity requires "general business contacts" that are so "continuous and systematic as to render them essentially at home in the forum State"); *see also Erickson Beamon Ltd. v. CMG Worldwide, Inc.*, No. 12-cv-5105, 2013 WL 5355010, at *8 (S.D.N.Y. Sept. 25, 2013) (denying transfer where transferee court lacked personal jurisdiction over plaintiff).

Not only is DTH at home in New York (and not California), but the claims in this case also have a close nexus to New York such that the relevant convenience factors overwhelmingly favor venue remaining in New York. *See Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 616 (S.D.N.Y. 2016) (factors include (1) convenience of witnesses; (2) convenience of parties; (3) location of and access to relevant documents and proof; (4) locus of operative facts; (5) availability of process to compel witnesses; (6) relative means of parties; (7) each district's familiarity with governing law; (8) weight accorded to plaintiff's choice of forum; and (9) judicial economy and the interests of justice).

"A defendant moving for transfer must show both that the original forum is inconvenient for it and that the plaintiff would not be substantially inconvenienced by a transfer." *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 744 (S.D.N.Y. 2013). In cases where transfer merely shifts the burden from defendants to plaintiff, transfer is disfavored. *Kiss My Face Corp. v. Bunting*, No. 02-cv-2645, 2003 WL 22244587, at *3 (S.D.N.Y. Sept. 30, 2003) ("The convenience of the parties does not favor transfer when it would merely shift any inconvenience from defendant to plaintiff.") Moreover, in weighing these factors, a plaintiff's choice of forum should not be set aside absent a "clear cut and convincing showing" by Defendants that convenience "weighs strongly in favor of the transferee court." *Id.*

Defendants have not made this showing.

*First*, DTH's choice of forum is "entitled to considerable weight, and should not be disturbed unless the balance of the several factors is strongly in favor" of a transfer. *Orb Factory, Ltd. v. Design Sci. Toys, Ltd.*, 6 F. Supp. 2d 203, 210 (S.D.N.Y. 1998). This is especially true since this forum is DTH's home forum. *Astor Holdings, Inc. v. Roski*, No. 01-cv-1905, 2002 WL 72936, at *13 (S.D.N.Y. Jan. 17, 2002) ("It is axiomatic that a plaintiff's choice of forum is entitled to great deference when the plaintiff has sued in the plaintiff's home forum.").

*Second*, the convenience of the parties and the witnesses is neutral or favors New York— Defendants have certainly not shown that convenience weighs so strongly in favor of a transfer that would warrant disturbing DTH's choice of forum. *See Kiss My Face*, 2003 WL 22244587, at *3. Though ChromaDiverse and Tyrus reside in San Francisco (Dkt. 25 at 11), Tyrus travels frequently to New York both on ChromaDiverse's behalf and because of her personal connections in New York (Glass Decl. ¶¶ 16–19). And, Defendants Gilbert and Gagnon are not at home in California either. Nor are DTH and its key personnel, all of whom are located in (or near) New York. Accordingly, a transfer to California would merely (impermissibly) "shift any inconvenience" to DTH. *Kiss My Face*, 2003 WL 22244587, at *3. Moreover, key witness Doris Fiotakis (Schnare's close friend) resides in Connecticut, and the convenience of non-party witnesses such as Fiotakis is "accorded more weight" than is accorded the convenience of party witnesses. *Freeplay Music*, 195 F. Supp. 3d at 617. Accordingly, these two convenience factors weigh against a transfer.

*Third*, the locus of operative facts is in New York: the DTH Archive was created in New York, DTH took possession of it in New York, Schnare's estate was administered in New York, and Defendants' conduct has had consequences to DTH in New York, compelling DTH to clear

title to its Archive so that it may continue to exercise dominion over that property in New York. And, even if some operative facts occurred outside of New York, a motion to transfer is disfavored—and the plaintiff's choice of forum prioritized—where operative facts occurred in both "plaintiff's chosen forum and the movant's proposed forum." *In re Lehman Bros. Holdings Inc.*, 594 B.R. 33, 57 (Bankr. S.D.N.Y. 2018); *St. Paul Fire & Marine Ins. Co. v. Novus Int'l, Inc.*, No. 09-cv- 01108, 2011 WL 6937593, at *3 (S.D.N.Y. Dec. 28, 2011), *aff'd*, 504 F. App'x 57 (2d Cir. 2012) (holding that because "operative facts" didn't occur "exclusively" in proposed transferee district, transfer was disfavored).

*Fourth*, the location of the relevant documents favors New York because the DTH Archive is located in New York.  This property comprises more than 24 boxes of physical prints, negatives, and related materials that may be a focus of discovery, in its physical form.  By contrast, there are no physical materials in California that are likely to be the subject of discovery, such that this factor favors this case proceeding in New York.

*Fifth*, judicial economy does not favor transfer to California.  In arguing that judicial economy favors a transfer, Defendants claim that "related disputes" are "already pending in the Northern District of California."  (Defs. Mem. at 11.)  This is false: ChromaDiverse brought its suit in *state* court in California, and there it remains.  Transfers are not favored when the "purportedly more convenient forum" is not a "United States district court." *Nat. Res. Def. Council v. U.S. Dep't of Energy*, No. 17-cv-989, 2018 WL 1229733, at *5 (S.D.N.Y. Mar. 6, 2018) (denying motion to transfer).

*Sixth*, this case presents questions of federal copyright law with which this Court is amply familiar, such that this factor too "weighs against transfer." *Freeplay Music*, 195 F. Supp. 3d at 620.

*Finally*, Defendants have not shown that either the need to compel unwilling witnesses or the relative means of the parties favors a transfer. *Kiss My Face*, 2003 WL 22244587, at *4 (denying motion to transfer and holding failure to proffer evidence "witnesses would be unwilling to travel" weighed against a transfer); *Student Advantage, Inc. v. Int'l Student Exch. Cards, Inc.*, No. 00-cv-1971, 2000 WL 1290585, at *8 (S.D.N.Y. Sept. 13, 2000) (denying request for transfer of venue and stating defendants "must offer documentation showing that granting or denying the transfer would be unduly burdensome").

Balancing these factors, the Court should deny Defendants' request to transfer to the Northern District of California.

## IV. THE COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS DTH'S INJURIOUS FALSEHOLD CLAIMS, AND ITS CLAIMS FOR DECLARATORY RELIEF AS TO GILBERT AND GAGNON

### A. The Fourth and Fifth Causes of Action State Claims for Injurious Falsehood

Injurious falsehood claims are "concerned with aspersions upon the title to property." *Lampert v. Edelman,* 261 N.Y.S.2d 450, 450 (1st Dep't 1965) (complaint challenging defendant's statement that plaintiff's right to property was "spurious or doubtful" stated claim for injurious falsehood). Such claims are distinct from defamation, which addresses statements "impugn[ing]" a plaintiff's "basic integrity or creditworthiness." *E.g.*, *Berwick v. New World Network Int'l, Ltd.*, No. 06-cv-2641, 2007 WL 949767, at *12, 15 (S.D.N.Y. Mar. 28, 2007) (false statement suggesting plaintiffs "were dishonest in their business dealings" states claim for defamation, not injurious falsehood). "The gravamen of an injurious falsehood action is a false and disparaging statement about another's property or directly damaging to one's pecuniary interests." *Egiazaryan v. Zalmayev*, No. 11-cv-2670, 2011 WL 6097136, at *10 (S.D.N.Y. Dec. 7, 2011); *see also Cunningham v. Hagedorn,* 72 A.D.2d 702, 704 (1st Dep't 1979) (injurious

falsehood claim lies "when one publishes false and disparaging statements about another's property under circumstances which would lead a reasonable person to anticipate that damage might flow therefrom"); *Mink Hollow Dev. Corp. v. State*, 87 Misc. 2d 61, 63 (N.Y. Ct. Cl. 1976) (injurious falsehood claim exists for "false disparagement of title resulting in an impairment of vendibility").

DTH has alleged exactly this, and it has alleged damages with the requisite degree of specificity under the circumstances.

Specifically, Defendants' falsehoods—statements by ChromaDiverse (Dkt. 1 ¶¶ 67, 69, 70, 72, 74) and Tyrus (*id.* ¶¶ 68, 70, 72–73) that ChromaDiverse presently owns the DTH Archive, and statements by Gilbert (*id.* ¶¶ 60–62) and Gagnon (*id.* ¶¶ 60–62, 68) that they previously owned it and had the right to transfer it to ChromaDiverse—are *not* alleged to have impugned DTH's reputation, but rather to have caused DTH pecuniary harm.  They have done so by limiting DTH's ability to license its rightful property (*id.* ¶¶ 64, 70, 101, 107; Glass Decl. ¶ 22), which ChromaDiverse admits has been an "essential source" of its own revenue (Dkt. 22-1 ¶¶ 38, 48; Glass Decl. ¶¶ 21, 23), the amount of which is obviously within ChromaDiverse's peculiar knowledge, such that this allegation should suffice, *see N.B. Garments (PVT), Ltd. v. Kids Int'l Corp.*, No. 03-cv-8041, 2004 WL 444555, at *2 (S.D.N.Y. Mar. 10, 2004) (heightened pleading requirement is relaxed "when facts are peculiarly within the opposing party's knowledge"); *Jones v. E. Brooklyn Sec. Servs. Corp.*, No. 11-cv-1021, 2012 WL 3235784, at *6 (E.D.N.Y. Aug. 7, 2012) (similar).[8]  And, DTH alleges that it has suffered pecuniary harm in the nature of legal fees (Dkt. 1 ¶¶ 64, 101, 107) necessitated to remove cloud of title from its

---

[8] Should the Court conclude that any of DTH's allegations should be stated with greater specificity, DTH respectfully requests leave to amend.  *See* Fed. R. Civ. P. 15(a)(2) (leave to amend should be "freely give[n]" when "justice so requires").

property. *See Murphy-Higgs v. Yum Yum Tree, Inc.*, 112 F. App'x 796, 797 (2d Cir. 2004) (legal fees cognizable special damages).

**B.**    **The First and Third Causes of Action State Claims for Declaratory Relief as to Gilbert and Gagnon**

DTH seeks declaratory relief as to Gilbert and Gagnon that it owns the physical DTH Archive and the copyrights therein, given that Gilbert and Gagnon have claimed (wrongly) that they owned that property in order to (ineffectively) convey that property to ChromaDiverse, despite lacking any legal right to do so.

To protect its rights to the DTH Archive, DTH is entitled to declaration as against Gilbert and Gagnon, given that they signed the Deed of Gift and Copyright Assignment Agreement purporting to convey the DTH Archive to ChromaDiverse.  That is, DTH is entitled to a declaration that Gilbert and Gagnon's exercise of dominion over the DTH Archive in 2022 was null and void, as was their effort to convey the DTH Archive to ChromaDiverse by signing the Deed of Gift and Copyright Assignment Agreement at that time.

**CONCLUSION**

For the reasons set forth herein, Defendants' motion to dismiss should be denied in its entirety.

27

Dated: July 9, 2025  
      New York, New York

/s/ Gregory Clarick  
CLARICK GUERON REISBAUM LLP  
Gregory A. Clarick  
Isaac B. Zaur  
Melissa C. Holsinger  
Ashley Hall  
41 Madison Ave., 23rd Floor  
New York, N.Y. 10010  
Telephone: 212.633.4310  
Facsimile: 646.478.9484  
Email: gclarick@cgr-law.com  
      izaur@cgr-law.com  
      mholsinger@cgr-law.com  
      ahall@cgr-law.com

*Attorneys for Plaintiff*  
*Dance Theatre of Harlem, Inc.*

## **LOCAL CIVIL RULE 7.1(C) CERTIFICATION**

Pursuant to Local Civil Rule 7.1(c), I hereby certify that the foregoing memorandum, inclusive of footnotes, contains 8,431 words, excluding the caption, any index, table of contents, table of authorities, signature blocks, and this certification.

*/s/ Gregory Clarick*
Gregory Clarick
