UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

<table>
<tr><td>
DANCE THEATRE OF HARLEM, INC.,

        Plaintiff,

        v.

CHROMADIVERSE, INC., JUDY TYRUS,
HARRIETT GILBERT, SHERRY GAGNON,

And

All photographs, negatives, and related
archived material created by Margaret Elizabeth
Schnare for Dance Theatre of Harlem and
located at 466 West 152nd Street, New York,
New York, *in rem,*

        Defendants.
</td><td>
Case No. 1:25-cv-02978
</td></tr>
</table>

## FIRST AMENDED ANSWER AND COUNTERCLAIMS
## OF DEFENDANTS CHROMADIVERSE, INC. AND JUDY TYRUS

Defendants ChromaDiverse, Inc. ("ChromaDiverse") and Judy Tyrus ("Tyrus" and, collectively with ChromaDiverse, "Answering Defendants"), by and through their undersigned counsel, as and for their First Amended Answer to the Complaint of Dance Theatre of Harlem, Inc. ("DTH"), respectfully state as follows:

1. Paragraph 1 does not require a response. To the extent that a response is required, Answering Defendants deny the allegations of Paragraph 1 in their entirety.

2. In response to the allegations in Paragraph 2, Answering Defendants deny that Tyrus asserts ownership of works (the "Marbeth Collection") created by Margaret Elizabeth Schnare ("Marbeth"). ChromaDiverse admits that it asserts ownership of the Marbeth Collection, which was conveyed to ChromaDiverse by Marbeth's heirs, Harriet Gilbert and Sherry Gagnon.

1

Answering Defendants deny that ChromaDiverse wrongfully asserts ownership of the Marbeth Collection, deny that the entire Marbeth Collection ever belonged to DTH, and deny that the Marbeth Collection never belonged to Marbeth's heirs.

3.    In response to the allegations in Paragraph 3, Answering Defendants admit that Tyrus acted as an archivist for DTH at some time, and that Tyrus sought permission from DTH to use images from the Marbeth Collection prior to learning that the Marbeth Collection was owned by Marbeth's heirs. Answering Defendants deny that the Marbeth Collection was created by Marbeth for DTH as a work-for-hire, deny that DTH always exercised control over the entire Marbeth Collection, and deny that DTH possesses the entire Marbeth Collection. The remaining allegations in Paragraph 3 are arguments that do not require response, but to the extent a response is required they are denied.

4.    Paragraph 4 does not require a response, as all claims against defendants Harriet Gilbert ("Gilbert", erroneously named as Harriett Gilbert) and Sherry Gagnon ("Gagnon") were dismissed, and the references to Tyrus are extraneous argument. To the extent that a response is required, Answering Defendants deny the allegations of Paragraph 4 in their entirety.

5.    Paragraph 5 consists of legal argument and a description of requested relief and does not require a response. To the extent that a response is required, Answering Defendants deny the allegations of Paragraph 5 in their entirety.

## PARTIES

6.    Answering Defendants lack information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 6.

7.    Answering Defendants admit the allegations in Paragraph 7.

8.    Answering Defendants admit the allegations in Paragraph 8.

2

9. The allegations in Paragraph 9 do not require a response, as all claims against Gilbert and Gagnon were dismissed.

10. The allegations in Paragraph 10 do not require a response, as all claims against Gilbert and Gagnon were dismissed.

11. Answering Defendants deny the allegation in Paragraph 11 that the entire Marbeth Collection is located at DTH at the given address.

## JURISDICTION AND VENUE

12. Answering Defendants admit the allegation in Paragraph 12 that the Court has jurisdiction over the remaining claims.

13. Answering Defendants admit the allegation in Paragraph 13 that the Court has in rem jurisdiction over physical property located within this judicial district.

14. Answering Defendants admit the allegation in Paragraph 14 that the Court has jurisdiction over the remaining claims.

15. The allegations in Paragraph 15 do not require a response, because the fourth and fifth causes of action were dismissed.

16. Answering Defendants admit the allegation in Paragraph 16 that the Court has personal jurisdiction over ChromaDiverse. Answering Defendants deny that ChromaDiverse committed a tortious act in New York, or anywhere.

17. Answering Defendants admit the allegation in Paragraph 17 that the Court has personal jurisdiction over Tyrus. Answering Defendants deny that Tyrus committed a tortious act in New York, or anywhere.

18. The allegations in Paragraph 18 do not require a response, as all claims against Gilbert were dismissed.

19.     The allegations in Paragraph 19 do not require a response, as all claims against Gagnon were dismissed.

20.     Answering Defendants admit the allegation in Paragraph 20 that venue is appropriate for the remaining claims.

## FACTUAL BACKGROUND

### Schnare Worked for DTH as a Photographer

21.     Answering Defendants deny the allegation in Paragraph 21 that Arthur Mitchell founded DTH but admit that Arthur Mitchell co-founded DTH in 1969. Answering Defendants lack sufficient information to admit or deny the remaining allegations of Paragraph 21.

22.     Answering Defendants deny the allegation in Paragraph 22 that Margaret Elizabeth Schnare ("Marbeth") was an employee of DTH at any time.

23.     Answering Defendants admit the allegation in Paragraph 23 that DTH provided access to Marbeth to photograph DTH at various events and locations. Answering Defendants deny the remaining allegations of Paragraph 23.

24.     Answering Defendants admit that Marbeth traveled domestically and internationally to photograph certain events. Answering Defendants deny that Schnare attended all DTH events. Answering Defendants lack sufficient information to admit or deny the remaining allegations of Paragraph 24.

25.     Answering Defendants deny the allegations in Paragraph 25.

26.     With respect to Paragraph 26, Answering Defendants admit that DTH used certain images created by Marbeth for its own purposes.

27.     Answering Defendants deny the allegations in Paragraph 27.

4

28.    With respect to Paragraph 28, Answering Defendants admit that Schnare delivered certain printed photographs to DTH for its use. Answering Defendants deny that the photographs were created for DTH.

29.    Answering Defendants deny the allegations in Paragraph 29.

30.    Answering Defendants admit the allegation in Paragraph 30 that Schnare stored photographs, negatives and related materials at her home. Answering Defendants deny the allegation that DTH owned and controlled such materials, or that it owned the materials in its possession.

31.    Answering Defendants lack sufficient information to admit or deny the allegations in Paragraph 31.

32.    Answering Defendants admit the allegation in Paragraph 32 that "after Schnare's death" DTH gained possession of further materials within the Marbeth Collection, from Doris Fiotakis. Answering Defendants deny that DTH obtained any portion of the Marbeth Collection from Marbeth's residence upon her death.

33.    Answering Defendants lack sufficient information to admit or deny the allegations in Paragraph 33.

34.    With respect to Paragraph 34, Answering Defendants deny that the entire Marbeth Collection is or ever was stored at DTH's headquarters at the listed address.

35.    Answering Defendants admit the allegations in Paragraph 35.

36.    Answering Defendants admit that Tyrus was a co-founder of ChromaDiverse and admit the remaining allegations in Paragraph 36.

**After Schnare's Death, the DTH Materials Remaining in Her Apartment**
**Were Delivered to DTH, with the Approval of Schnare's Executors and Heirs**

37.    Answering Defendants admit the allegation in Paragraph 37.

38. Answering Defendants admit the allegations in Paragraph 38.

39. Answering Defendants deny the allegations in Paragraph 39, which are argument, as the Will speaks for itself and is the best evidence of its contents. The remainder of Paragraph 39 is argument to which no response is required, but if a response is required, Answering Defendants deny that DTH "already owned the right, title, and interest in all of these materials, which Schnare had created for DTH as work-for-hire."

40. Answering Defendants admit the allegations in Paragraph 40.

41. Answering Defendants admit that Euler agreed to permit Fiotakis to take custody of certain materials for a limited purpose. Answering Defendants deny the allegation in Paragraph 41 that Euler and Fiotakis "discussed that Fiotakis would deliver these materials to DTH." The remainder of Paragraph 41 is argument to which no response is required. However, if a response is required, Answering Defendants deny that there existed a "plan" to deliver anything to DTH, or that the materials in Marbeth's apartment "belonged to DTH" or that delivery to DTH was consistent with Schnare's words and actions, or that doing so was consistent with Fiotakis' understanding of Schnare's "view."

42. Answering Defendants admit the allegation in Paragraph 42 that Euler permitted Fiotakis to take possession of certain materials for a limited purpose. Answering Defendants deny the remaining allegations of Paragraph 42.

43. Answering Defendants admit the allegation in Paragraph 43 that Fiotakis took possession of certain materials after Marbeth's death, at her home in Connecticut.

44. Answering Defendants admit the allegation in Paragraph 44 that Euler signed an Affidavit in Relation to the Settlement of Estate, which is the best evidence of its content.

45. Answering Defendants admit the allegation in Paragraph 45 that on or about October 6, 2008, Arthur Mitchell, Sharon (Williams) Duncan, and Tyrus visited Fiotakis' home in Connecticut, from which they removed approximately 16 boxes of material from the Marbeth Collection, but which did not consist of all the portions of the Marbeth Collection in Fiotakis' possession.

46. Answering Defendants admit the allegation in Paragraph 46 that DTH openly used certain materials from the Marbeth Collection and deny that DTH did so exclusively. Answering Defendants lack information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 46.

47. Answering Defendants admit the allegations in Paragraph 47.

48. Answering Defendants admit the allegations in Paragraph 48.

49. Answering Defendants admit the allegation in Paragraph 49 that, before learning that DTH did not own the Marbeth Collection, Tyrus stated her belief that DTH owned certain images within the Marbeth Collection.

50. Answering Defendants admit the allegations in Paragraph 50.

51. Answering Defendants admit the allegations in Paragraph 51.

52. Answering Defendants admit the allegations in Paragraph 52.

53. Answering Defendants admit the allegations in Paragraph 53.

54. Answering Defendants admit the allegations in Paragraph 54.

55. Answering Defendants admit the allegations in Paragraph 55.

56. Answering Defendants admit the allegation in Paragraph 56 that leading up to publication of Tyrus' book, the relationship between Tyrus and DTH soured. No response is

required to the portion of Paragraph 56 addressing how Tyrus "seemed," which is argument. The remainder of Paragraph 56 is denied.

57. Answering Defendants admit the allegations in Paragraph 57 that Tyrus communicated with Fiotakis while authoring a book, and that Tyrus and Fiotakis discussed the identity of Marbeth's relatives.

58. Answering Defendants admit the allegation in Paragraph 58 that Gilbert and Gagnon, as heirs to Marbeth, transferred and assigned to ChromaDiverse all Marbeth's rights to the Marbeth Collection. Answering Defendants deny the allegation that those rights "in fact belong to DTH" and deny that DTH controlled and exercised dominion over the Marbeth Collection since the creation of the materials within the Marbeth Collection.

59. Answering Defendants admit the allegations in Paragraph 59.

60. Answering Defendants admit the allegations in Paragraph 60, other than the statement that the Deed of Gift falsely stated anything, which Answering Defendants deny.

61. Answering Defendants admit the allegations in Paragraph 61 that the Deed of Gift attached an Inventory List of Marbeth Photographic Collection. Answering Defendants deny that the Deed of Gift transfers only a portion of the Marbeth Collection that was in Marbeth's apartment at the time of her death. Answering Defendants lack information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 61.

62. Answering Defendants admit the allegations in Paragraph 62 that Gilbert and Gagnon executed the Copyright Assignment, which references the Deed of Gift and transfers to ChromaDiverse all right, title and interest to certain works. Answering Defendants deny that the Copyright Assignment transfers only a portion of the Marbeth Collection that was in Marbeth's apartment at the time of her death.

63.     Answering Defendants admit the allegations in Paragraph 63 that Euler permitted Fiotakis to take possession of certain materials for a certain, limited purpose, and that Gagnon was present, and that Gilbert was not present. Answering Defendants deny the remaining allegations of Paragraph 63.

64.     Answering Defendants admit the allegation in Paragraph 64 that ChromaDiverse has used certain materials from the Marbeth Collection. Answering Defendants deny the remaining allegations of Paragraph 64.

**Tyrus and ChromaDiverse Wrongfully Claim Ownership of DTH's Physical Property and Copyrights, to DTH's Harm and in Derogation of its Rights**

65.     Answering Defendants admit the allegations in Paragraph 65 that ChromaDiverse has sought to obtain possession of the Marbeth Collection from DTH, and to obtain DTH's acknowledgement that ChromaDiverse owns the Marbeth Collection.  Answering Defendants deny the remaining allegations of Paragraph 65.

66.     Answering Defendants admit the allegations in Paragraph 66.

67.     Answering Defendants admit the allegations in Paragraph 67.

68.     Answering Defendants admit the allegations in Paragraph 68.

69.     Answering Defendants admit the allegations in Paragraph 69 that ChromaDiverse asserts in the California Action that it owns the Marbeth Collection, and that DTH had possession of some photographs from the Marbeth Collection prior to Marbeth's death.  Answering Defendants deny the remaining allegations of Paragraph 69.

70.     Answering Defendants admit the allegations in Paragraph 70 that ChromaDiverse used the Marbeth Collection and has preserved the legacy of Marbeth's works in a digital vault, and that ChromaDiverse has licensed certain portions of the Marbeth Collection. Answering

Defendants deny that ChromaDiverse or Tyrus has used "DTH's copyrighted materials" and denies the remaining allegations of Paragraph 70.

72. Answering Defendants admit the allegations in Paragraph 71 that ChromaDiverse has claimed ownership over the Marbeth Collection. Answering Defendants deny the remaining allegations of Paragraph 71.

72. The allegations in Paragraph 72 do not require a response, because the fourth and fifth causes of action were dismissed.

73. The allegations in Paragraph 73 do not require a response, because the fourth and fifth causes of action were dismissed.

74. The allegations in Paragraph 74 do not require a response, because the fourth and fifth causes of action were dismissed.

75. The allegations in Paragraph 75 do not require a response, because the fourth and fifth causes of action were dismissed.

76. The allegations in Paragraph 76 purport to characterize DTH's claims, and do not require a response.

**FIRST CAUSE OF ACTION**
**(Declaratory Judgment Pursuant to 28 U.S.C. §§ 2201 and 2202)**
**(That DTH Owns the Copyrights in the DTH Archive as Works-For-Hire Under the 1909)**
**(Copyright Act (17 U.S.C. § 26 (1976 ed.)) and/or the 1976 Copyright Act (17 U.S.C. § 201))**

77. Answering Defendants repeat and reallege each of their responses set forth above as if fully set forth herein.

78. Answering Defendants deny the allegations in Paragraph 78.

79. Answering Defendants deny the allegations in Paragraph 79.

80. Answering Defendants admit the allegation in Paragraph 80 that ChromaDiverse claims an interest in the Marbeth Collection and deny that doing so is wrongful.

10

81.    Answering Defendants admit that a justiciable controversy exists between ChromaDiverse and DTH over ownership of the Marbeth Collection, and that Gilbert and Gagnon, as Marbeth's heirs, transferred Marbeth's rights therein to ChromaDiverse, and that ChromaDiverse asserts that it owns all right, title and interest to the Marbeth Collection. Answering Defendants deny the remaining allegations of Paragraph 81.

82.    Answering Defendants deny the allegations in Paragraph 82.

**SECOND CAUSE OF ACTION**
**(In the Alternative as to Defendants ChromaDiverse and Tyrus)**
**(Declaratory Judgment Pursuant to 28 U.S.C. §§ 2201 and 2202)**
**(That DTH Has a Non-Exclusive Perpetual License to Copyrights in the DTH Archive)**

83.    Answering Defendants repeat and reallege each of their responses set forth above as if fully set forth herein.

84.    Answering Defendants deny the allegations in Paragraph 84.

85.    Answering Defendants deny the allegations in Paragraph 85.

86.    Answering Defendants deny the allegations in Paragraph 86.

87.    Answering Defendants deny the allegations in Paragraph 87.

88.    Answering Defendants admit the allegation in Paragraph 88 that ChromaDiverse asserts it is the owner of the Marbeth Collection and that DTH has no right to use and reproduce the photographs within the Marbeth Collection and deny that ChromaDiverse's assertion of its rights is wrongful. Answering Defendants deny that Tyrus asserts any ownership interest in the Marbeth Collection.

89.    Answering Defendants admit the allegation in Paragraph 89 that a justiciable controversy exists between DTH and ChromaDiverse over their respective rights to the Marbeth Collection and deny that a justiciable controversy exists between DTH and Tyrus relating to the Marbeth Collection.

11

90.     Answering Defendants deny the allegations in Paragraph 90.

## THIRD CAUSE OF ACTION
### (Declaratory Judgment Pursuant to 28 U.S.C. §§ 2201 and 2202)
### (That DTH Owns the Physical Property in the DTH Archive)

91.     Answering Defendants repeat and reallege each of their responses set forth above as if fully set forth herein.

92.     Answering Defendants deny the allegations in Paragraph 92.

93.     Answering Defendants admit the allegation in Paragraph 93 that a justiciable controversy exists between DTH and ChromaDiverse over their respective rights to physical property within the Marbeth Collection and deny that Tyrus claims any right to the Marbeth Collection.

94.     Answering Defendants deny the allegations in Paragraph 94.

95.     Answering Defendants deny the allegations in Paragraph 95.

## FOURTH CAUSE OF ACTION
### (Injurious Falsehood Against Defendants Tyrus and ChromaDiverse)

96.     Answering Defendants repeat and reallege each of their responses set forth above as if fully set forth herein.

97.     The allegations in Paragraph 97 do not require a response, because the fourth cause of action was dismissed.

98.     The allegations in Paragraph 98 do not require a response, because the fourth cause of action was dismissed.

99.     The allegations in Paragraph 99 do not require a response, because the fourth cause of action was dismissed.

100.    The allegations in Paragraph 100 do not require a response, because the fourth cause of action was dismissed.

## FIFTH CAUSE OF ACTION
### (Injurious Falsehood Against Defendants Gilbert and Gagnon)

101.    The allegations in Paragraph 101 do not require a response, because the fourth cause of action was dismissed.

102.    Answering Defendants repeat and reallege each of their responses set forth above as if fully set forth herein.

103.    The allegations in Paragraph 103 do not require a response, because the fifth cause of action was dismissed.

104.    The allegations in Paragraph 104 do not require a response, because the fifth cause of action was dismissed.

105.    The allegations in Paragraph 105 do not require a response, because the fifth cause of action was dismissed.

106.    The allegations in Paragraph 106 do not require a response, because the fifth cause of action was dismissed.

107.    The allegations in Paragraph 107 do not require a response, because the fifth cause of action was dismissed.

## AFFIRMATIVE DEFENSES

1.    The Complaint fails to state a claim on which relief can be granted.

2.    The Complaint fails as to Tyrus as there is no justiciable controversy.

3.    The Complaint is barred in whole or in part by DTH's own prior admission that Marbeth owned the negatives associated with the Marbeth Collection.

4.    The Complaint is barred, in whole or in part, because DTH lacks standing and cannot establish ownership of any valid copyright or exclusive rights in the works at issue because,

13

*inter alia*, DTH has not alleged or proven any valid written transfer signed by Marbeth conveying copyright ownership to DTH as required.

5.      The Complaint is barred, in whole or in part, because the works at issue were not works made for hire, including because Marbeth was not DTH's employee and the parties' contemporaneous writings and conduct reflect that Marbeth retained ownership absent a later negotiated agreement.

6.      The Complaint is barred, in whole or in part, because ChromaDiverse holds a valid written assignment of copyright ownership executed by Marbeth's heirs that satisfies 17 U.S.C. § 204(a), and therefore DTH is not entitled to a declaration voiding that assignment on formal validity grounds.

7.      The Complaint is barred, in whole or in part, because any rights DTH may have in the works at issue are limited to a non-exclusive license (if any), and DTH is not entitled to declarations or relief premised on exclusive ownership; to the extent license scope is at issue, DTH bears the burden to prove that any use exceeded the scope of any license.

8.      DTH's claims for equitable relief are barred, in whole or in part, by laches because DTH knew or should have known of the facts underlying its claims, inexcusably delayed in asserting them, and that delay has prejudiced Defendants.

9.      The Complaint is barred, in whole or in part, by DTH's prior admissions and course of conduct acknowledging Marbeth's ownership of key materials, including negatives, and the need for a future arrangement to transfer ownership, which admissions are inconsistent with DTH's present claims of exclusive ownership.

14

10.     Defendants affirmatively plead all defenses required to be pleaded under Federal Rule of Civil Procedure 8(c)(1), including license, and reserve the right to assert additional defenses that may be revealed through discovery and further factual development.

**WHEREFORE**, Answering Defendants respectfully request that the Court dismiss the Complaint in its entirety and grant such other relief as is just and proper.

## <u>COUNTERCLAIMS BY CHROMADIVERSE AGAINST DTH</u>

Counterclaimant ChromaDiverse, Inc. ("ChromaDiverse"), by and through its undersigned attorneys, as for its Counterclaims against Dance Theatre of Harlem ("DTH"), hereby alleges as follows:

## <u>NATURE OF THE ACTION</u>

1.     This is an action for declaratory relief and conversion, relating to a collection of photographs and related materials created and owned by Mary Elizabeth ("Marbeth") Schnare and owned by ChromaDiverse.

2.     Marbeth was a photographer of unique talent who took images of numerous art organizations and events, including Alvin Ailey American Dance Theatre, the International Ballet Competition, Waive Hill Sculpture Garden, Ursula Von Rydingsvaard Exhibits, Storm King Exhibits, The Wagner Society performances, the New York City Opera, Metropolitan Opera performances, Lotte Lehman's Music Academy of the West, NYC Strongman Competition and DTH.

3.     Marbeth passed away in 2006, leaving a will and naming her relatives as her heirs. Later, the heirs transferred ownership over Marbeth's works to ChromaDiverse. Despite ChromaDiverse's ownership of the copyrights to the works, DTH refused to acknowledge ChromaDiverse's ownership, claims ownership for itself, and refuses to turn over to

15

ChromaDiverse certain photographs and other materials owned by ChromaDiverse and maintained by DTH within this judicial district.

4.      ChromaDiverse seeks a judicial declaration confirming its ownership of the Marbeth Collection, damages from DTH's conversion of works within the Marbeth Collection and injunctive relief requiring DTH to turnover such works to ChromaDiverse. In addition to being legally required, this relief is necessary to preserve the important cultural legacy of DTH, as ChromaDiverse will digitize and preserve the integrity of the Marbeth Collection, whereas DTH has maintained portions of the Marbeth Collection in conditions unsuitable for such preservation.

**PARTIES**

5.      ChromaDiverse is, and at all relevant times herein was, a 501(c)(3) nonprofit corporation and arts service organization, formed in California with its principal place of business in San Francisco, California. ChromaDiverse specializes in protecting, preserving, and presenting the archives of performing arts companies through innovative digital technologies, including the CD Digital Vault, an image archival platform created, developed and hosted by ChromaDiverse. The CD Digital Vault offers an easy-to-use website that can be effortlessly searched and leveraged for research, marketing, fundraising, teaching, and legacy preservation. The CD Digital Vault archive is available globally to companies, as well as the interested public.

6.      DTH is, and at all times relevant herein was, a 501(c)(3) nonprofit corporation with its principal place of business located in New York, New York. DTH is, and at all relevant times herein was, an American professional ballet company and school. DTH was founded in 1969 by Arthur Mitchell and Karel Shook. Arthur Mitchell was the Artistic Director of DTH until his retirement in 2004.

## JURISDICTION AND VENUE

7.    This Court has exclusive jurisdiction over this action pursuant to U.S.C. §§ 1331 and 1338 because it arises under the Copyright Act. The Court further has jurisdiction pursuant to the Declaratory Relief Act, 28 U.S.C. §§ 2201-2202 as the underlying issues for which ChromaDiverse seeks declaratory judgment must resolve a federal question involving copyright.

8.    This Court has supplemental jurisdiction over the Fourth Cause of Action pursuant to 28 U.S.C. § 1367.

9.    DTH is subject to personal jurisdiction in this Court because it maintains its principal place of business in Harlem, New York, and because DTH took actions in this district to give rise to the actions against it.

10.    Venue is appropriate in this District (a) pursuant to 28 U.S.C. §§ 1391(b)(2) and 1655 because a substantial part of the events giving rise to the claim occurred in this District and because the property that is the subject of the action is at least in part situated in this District.

## FACTUAL BACKGROUND

### Marbeth and Her Works

11.    Among her other activities, Marbeth began photographing DTH performances and rehearsals in 1969, and she continued to do so until approximately 2001. Marbeth was not an employee of DTH and was not under contract with DTH. She chose which activities to photograph, and she maintained complete independence and autonomy over her artistic work. Marbeth was invited to travel with DTH on certain occasions, and she decided whether or not to travel with DTH.

12.    In photographing DTH activities, Marbeth controlled the artistic process. She decided what to shoot. She alone made decisions about composition (such as the subject,

17

perspective, framing and angle), lighting, and technical settings such as shutter speed, aperture and ISO. She provided all her own equipment. DTH did not supervise or control her work, and it had no right to do so. DTH did not provide any of the equipment used by Marbeth in her work.

13.    Marbeth lived in an apartment, where she maintained a darkroom in which she developed her negatives and printed images. During her lifetime, Marbeth stored the negatives of her works at her apartment, along with hundreds if not thousands of prints and contact sheets. DTH had no right to control the prints and images stored at Marbeth's apartment, and it did not exercise any control over them.

14.    From time to time, DTH asked Marbeth for prints of her works. ChromaDiverse is informed and believes and based thereon alleges that Marbeth would permit DTH on occasion to select images from contact sheets made by Marbeth and would print images for DTH. ChromaDiverse is informed and believed and based thereon alleges that Marbeth never transferred any of her negatives to DTH, or anyone else, during her lifetime, and that it was always understood by Marbeth and DTH that Marbeth owned the negatives. This was confirmed in a meeting that included Marbeth, Mr. Mitchell and others from DTH, as discussed below.

15.    Because Marbeth was the artist who created the Marbeth Collection and did not assign her rights in a signed writing to anyone and did not act as a work-for-hire, and was not an employee of any other party, she owned the copyrights to the Marbeth Collection.

**Marbeth Left the Marbeth Collection to Her Relatives**

16.    Marbeth passed away in 2006.

17.    Marbeth left a Last Will and Testament (the "Will"), leaving her residuary estate, including the Marbeth Collection, to her relatives as beneficiaries, Gloria K. Euler ("Euler") and Harriet K. Gilbert ("Gilbert"). The Will also appointed Ms. Euler and Ms. Gilbert as executors of

Marbeth's estate. The Will was filed with the New York County Surrogate's Court, control #35481, file #2006-3274 for voluntary administration, and the assets of Marbeth's estate were distributed to Euler and Gilbert.

18.     Shortly after Marbeth's death, her friend Doris Fiotakis ("Fiotakis") was present at Marbeth's apartment, along with Ms. Euler and Ms. Euler's daughter, Sherry Gagnon ("Gagnon"). Because Euler and Gagnon resided in Arizona, and because Fiotakis asked whether she could use the Marbeth Collection stored in Marbeth's apartment to write a manuscript, Euler agreed to allow Fiotakis to take temporary possession of the portion of the Marbeth Collection stored in Marbeth's apartment.

19.     ChromaDiverse is informed and believes that those items were stored in Fiotakis' basement for years, without any climate control, humidity control or proper storage. On or about October 6, 2008, Arthur Mitchell, Sharon (Williams) Duncan, and Tyrus visited Fiotakis' home in Connecticut, from which they removed approximately 16 boxes of material from the Marbeth Collection, but which did not consist of all of the portions of the Marbeth Collection in Fiotakis' possession. DTH still has that material in its possession.

**ChromaDiverse Acquires Exclusive Rights to the Marbeth Collection**

20.     On or about May 11, 2022, ChromaDiverse received as a donation a Deed of Gift ("Deed"), evidencing the irrevocable transfer of the entire photography collection of Margaret Elizabeth Schnare ("Marbeth"), including all rights, title and interest in and to the Marbeth photography collection (collectively, the "Marbeth Collection"), which Deed was fully-executed by Harriet K. Gilbert and Sherry Gagnon (collectively, the "Donors"), the sole legal owners of the Marbeth Collection.

21.     On or about June 15, 2022, ChromaDiverse entered into a Copyright Assignment Agreement ("Copyright Assignment") with the Donors, pursuant to which the Donors irrevocably assigned all right, title and interest in and to the entire Marbeth Collection, and which Copyright Assignment incorporated by reference the Deed. On or about that same date, counsel for ChromaDiverse sent DTH a letter notifying DTH of ChromaDiverse's sole and exclusive rights in and to the entire Marbeth Collection and "requesting delivery and surrender of any and all photographs taken by Marbeth (whether originals, copies or backups thereof), and all other materials, documents and things, whether in physical form or as electronically stored information ('ESI'), that are part of the Collection, in Dance Theatre of Harlem's possession, custody or control."

22.     In July 2022, ChromaDiverse asked DTH to transfer to ChromaDiverse possession of boxes of material from the Marbeth Collection in DTH's possession, custody or control.

23.     On August 9, 2022, at DTH's request, ChromaDiverse provided DTH with copies of the fully executed Deed and Copyright Assignment.

24.     On April 20, 2026, the Donors executed a Quitclaim Assignment ("Quitclaim Assignment"), pursuant to which the Donors clarified, for the avoidance of any doubt, their original intent under the Deed and Copyright Assignment, to irrevocably assign to ChromaDiverse all right, title and interest in and to the entire Marbeth Collection. On April 21, 2026, counsel for ChromaDiverse sent DTH a copy of the fully-executed Quitclaim Assignment, reminding DTH of ChromaDiverse's sole and exclusive rights in and to the entire Marbeth Collection and reiterating its request that DTH deliver and surrender to ChromaDiverse any and all photographs taken by Marbeth (whether originals, copies or backups thereof), and all other materials, documents and

20

things, whether in physical form or as electronically stored information ('ESI'), that are part of the Collection, in DTH's possession, custody or control.

**ChromaDiverse Requests That DTH Turn Over Materials**
**in DTH's Possession That Are Owned by ChromaDiverse**

25.    On July 20, 2022, ChromaDiverse asked DTH to turn over the portions of the Marbeth Collection in DTH's possession, custody or control.

26.    DTH failed and refused to turn over any of the materials from the Marbeth Collection in DTH's possession, custody or control. Instead, DTH asserted that it owned the Marbeth Collection. DTH asserts that Marbeth was employed by DTH and that Marbeth acted as a work-for-hire. DTH therefore asserts that it owns the copyrights to the Marbeth Collection, despite the clear provisions of Marbeth's Will bequeathing her property to her heirs.

27.    However, DTH has no evidence that Marbeth was an employee of DTH at any time. In this litigation, DTH has not produced any payroll records, pay stubs, tax forms, employment agreements, or any other documentation evidencing that Marbeth was an employee. Marbeth's close friend, Fiotakis, confirmed at deposition that Marbeth was a freelancer.

28.    Nor has DTH produced any evidence of a contract signed by Marbeth and DTH confirming that her works were made on a work-for-hire basis.

29.    What records do exist confirm that Marbeth was neither an employee of DTH nor acting as a work-for-hire for DTH, and that DTH and Marbeth always knew that Marbeth was the owner of the Marbeth Collection. After he retired, Arthur Mitchell donated his records to the Rare Book and Manuscript Library at Columbia University. In 2023, after a dispute over ownership of the Marbeth Collection arose between ChromaDiverse and DTH, an executive from Columbia forwarded to DTH a document located in the Mitchell Collection maintained at Columbia, Box 29, Folder 10. That document, initialed in the distinctive handwriting of Mr. Mitchell, is titled

21

"MINUTES OF MEETING WITH MARBETH SCHNARE – DANCE PHOTOGRAPHER – FEBRUARY 24, 1997." These minutes reflect the substance of a meeting between Marbeth, Mr. Mitchell and others from DTH. They reflect that the meeting "was in reference to Marbeth's relationship with Dance Theatre of Harlem." They confirm that DTH "would like to negotiate a contract" for Marbeth to become an in-house photographer for DTH, and that DTH "will make her an offer." These minutes therefore confirm that as of 1997 – eighteen years after Marbeth began photographing DTH activities and dancers – Marbeth was not an employee of DTH.

30.     The minutes also address the ownership of the Marbeth Collection: "Currently the film negatives belong to Marbeth but DTH is willing to work out an arrangement to gain ownership of these negatives." The minutes state that a future meeting was contemplated to "finalize contract proceedings." The minutes therefore reflect that both Marbeth and DTH understood that Marbeth owned her works, and that if DTH wanted to gain ownership of Marbeth's works a contract would need to be negotiated and signed.

31.     ChromaDiverse is informed and believes and based thereon alleges that no contract ever was signed transferring ownership of the Marbeth Collection from Marbeth to DTH. DTH has not identified or produced any such contract.

32.     Internal communications from DTH further confirm that no contract between Marbeth and DTH exists. In November 2022, executives at DTH exchanged emails about whether DTH had documentation confirming that DTH is the rights holder for the Marbeth Collection. None of them was able to identify any documentation. Also in November 2022, Anna Glass, the Executive Director of DTH, asked Ms. Fiotakis whether Ms. Fiotakis was aware of "any agreements between DTH and Marbeth." Ms. Fiotakis responded that "I don't recall seeing/keeping anything like that."

22

## FIRST COUNTERCLAIM
### (For Declaratory Judgment by ChromaDiverse Against DTH)
### (for Works Created Prior to January 1, 1978)

33.     ChromaDiverse repeats and realleges each of the allegations set forth above as if fully set forth herein.

34.     A justiciable controversy exists over ownership of the copyrights in the Marbeth Collection for works created before January 1, 1978, under the Copyright Act of 1909.

35.     ChromaDiverse owns the copyrights to such works, pursuant to the Deed and Copyright Assignment.

36.     DTH claims an interest adverse to ChromaDiverse, asserting that it owns the copyrights in the Marbeth Collection.

**37.**     ChromaDiverse is entitled to a judicial declaration that it is the owner of the copyrights in the Marbeth Collection created prior to January 1, 1978.

## SECOND COUNTERCLAIM
### (For Declaratory Judgment by ChromaDiverse Against DTH)
### (for Works Created On or After January 1, 1978)

38.     ChromaDiverse repeats and realleges each of the allegations set forth above as if fully set forth herein.

39.     A justiciable controversy exists over ownership of the copyrights in the Marbeth Collection for works created on or after January 1, 1978, under the Copyright Act of 1976.

40.     ChromaDiverse owns the copyrights to such works, pursuant to the Deed and Copyright Assignment.

41.     DTH claims an interest adverse to ChromaDiverse, asserting that it owns the copyrights in the Marbeth Collection.

42.    ChromaDiverse is entitled to a judicial declaration that it is the owner of the copyrights in the Marbeth Collection created on or after January 1, 1978.

### THIRD COUNTERCLAIM
### (For Declaratory Judgment by ChromaDiverse Against DTH)
### (That ChromaDiverse Owns The Physical Property In the Marbeth Collection)

43.    ChromaDiverse repeats and realleges each of the allegations set forth above as if fully set forth herein.

44.    As the owner of the copyrights to the images in the Marbeth Collection, ChromaDiverse has the exclusive right to reproduce, distribute, display, and create new versions of the photographs, and ChromaDiverse owns photographs, contact sheets and negatives of all such photographic images, as well as any other property derived from the copyrights in the Marbeth Collection.

45.    A justiciable controversy exists over ownership of photographs, contact sheets and negatives and any other property derived from the copyrights in the Marbeth Collection, within the possession, custody or control of DTH (the "Property").

46.    ChromaDiverse owns the Property pursuant to the Deed and Copyright Assignment.

47.    DTH claims an interest adverse to ChromaDiverse and claims it owns the Property.

48.    ChromaDiverse is entitled to a judicial declaration that it is the owner of the Property.

### FOURTH COUNTERCLAIM
### (Conversion by ChromaDiverse Against DTH)

49.    ChromaDiverse repeats and realleges each of the allegations set forth above as if fully set forth herein.

50.    ChromaDiverse acquired ownership of the Marbeth Collection from Marbeth's heirs through the Deed and Copyright Assignment. As the owner of the Marbeth Collection, ChromaDiverse has the right to possess photographs, contact sheets, negatives and related material from the Marbeth Collection.

51.    ChromaDiverse demanded that DTH turn over to ChromaDiverse portions of the Marbeth Collection in DTH's possession, but DTH refused to do so.

52.    DTH intentionally exercised unlawful dominion and control over ChromaDiverse's property, namely images, negatives and other works that are part of the Marbeth Collection owned by ChromaDiverse, to the exclusion of ChromaDiverse's rights.

53.    DTH intended to and did interfere with ChromaDiverse's right to possess such property, as described herein, and has deliberately deprived ChromaDiverse of possession of its property.

54.    DTH's conversion of ChromaDiverse's property has damaged ChromaDiverse by placing a cloud on title and causing ChromaDiverse to lose revenue from licenses that were or would have been available to ChromaDiverse.

55.    DTH's conduct, in refusing to turn over ChromaDiverse's property, was and is outrageous and undertaken with malice and/or reckless disregard for ChromaDiverse's rights, justifying the imposition of punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, ChromaDiverse respectfully requests a judgment:

(1) Declaring that ChromaDiverse owns the copyrights to works within the Marbeth Collection created before January 1, 1978;

(2) Declaring that ChromaDiverse owns the copyrights to works within the Marbeth Collection created on or after January 1, 1978;

(3) Declaring that ChromaDiverse owns the Property;

(4) For monetary damages according to proof at trial;

(5) For punitive damages;

(6) For a temporary and/or permanent injunction requiring DTH to turn over to ChromaDiverse the Property; and

(7) For such further and additional relief as may be granted.

Dated: April 21, 2026
       White Plains, NY

**LACHTMAN COHEN
 & BELOWICH LLP**

**/s/ *Brian S. Cohen***
Brian S. Cohen
1133 Westchester Avenue
Suite N-200
White Plains, NY 10604
Email: bcohen@lcb-law.com
Tel: (914) 893-4720
***Attorneys for Defendant and Counterclaimant***
***ChromaDiverse, Inc. and Defendant Judy Tyrus***